ROE, Denise B., Individually and as Executrix of the Estate of Gordon A. Roe, Deceased, Appellant,

v.

DEERE AND COMPANY, INC.

No. 87–5856.

United States Court of Appeals, Third Circuit.

Argued May 2, 1988.

Decided Aug. 31, 1988.

Laurence M. Kelly (argued), Kelly & Kelly, Montrose, Pa., Edward C. Roberts, York, Pa., for appellant.

Cody H. Brooks, Henkelman, Kreder, O'Connell & Brooks, Scranton, Pa., J. Wilson McCallister (argued), Law Dept. Deere & Co., Moline, Ill., for appellee.

Before GIBBONS, Chief Judge, and MANSMANN and COWEN, Circuit Judges.

## OPINION OF THE COURT

MANSMANN, Circuit Judge.

In this appeal we review the conduct of a products liability trial. At issue was the design of an agricultural tractor and whether the fatal injuries sustained by its operator would have occurred if the tractor had been equipped with a particular safety feature. Of particular concern to us is the plaintiff's attempt to present a theory of liability based upon the lack of crashworthiness of the tractor.

The crucial inquiry is whether the district court erred in refusing to charge the jury that crashworthiness of the tractor was to be considered in this case. We find, contrary to the district court, that the concept of crashworthiness was one, if not the premiere, premise of liability from the inception and throughout the duration of this action. We conclude that it was incumbent upon the district court to instruct the jury that the tractor could be defective if it caused injuries to be exacerbated due to its lack of crashworthiness. The court's failure to so instruct compels us to vacate the judgment in favor of the defendant and remand the matter to the district court for a new trial.

### I.

Denise Roe, individually and as executrix of the estate of Gordon Roe, instituted this diversity action, governed by Pennsylvania law, in the United States District Court for the Middle District of Pennsylvania. In her complaint, Mrs. Roe alleged that a tractor, manufactured by defendant, Deere and Company, was defective and caused her husband to sustain grave and serious injuries leading to his death on May 19, 1986. The defect alleged by plaintiff was the absence of a rollover protection structure (ROPS), a seatbelt and rollbar intended to keep the operator within a protected space. It was not disputed that the ROPS was an available feature and could have been implemented as a part of the design of this tractor.

The facts leading to the eventual fatal injuries are as follows. On May 17, 1986, Gordon Roe was operating a John Deere agricultural tractor with an attached rotary motor. The tractor apparently struck a large rock protruding from the ground, causing it to roll over down a slope. Gordon either fell or was thrown from the tractor and was pinned under its right rear wheel. There were no witnesses to the accident.

After several hours, Gordon was discovered by a neighbor who summoned medical assistance. Gordon was extracted from underneath the tractor and was transported by helicopter to a hospital where he died two days later as a result of the injuries.

Trial of the case was bifurcated as to the issues of liability and damages. After three days of testimony on the strict liability issue, the jury returned a verdict in favor of the defendant. Specifically, in response to a special interrogatory, the jury found that the farm tractor was not defective when it left Deere's control.

Mrs. Roe filed a motion for new trial raising numerous claims of error. The district court addressed the assignments of error and concluded that the evidence presented strongly supported the jury's verdict. Mrs. Roe appealed from the denial of a motion for a new trial. We have jurisdiction pursuant to 28 U.S.C. § 1291.

We review the denial of a motion for a new trial for legal error, including alleged abuse of discretion. Since our primary focus here concerns the failure to instruct the jury on a particular theory of liability, our scope of review of the jury instructions given is governed by the abuse of discretion standard. We must determine whether the charge, taken as a whole and viewed in light of the evidence, fairly and adequately submitted the issues in the case to the jury without confusing or misleading them. *United States v. Fischbach and Moore, Inc.*, 750 F.2d 1183 (3d Cir.1984).

## II.

Although a number of issues have been called to our attention, we reiterate that the most compelling allegation of error concerns the failure of the district court to instruct the jury on the theory of crashworthiness as a basis for a finding of liability on the part of Deere.

The district court explained its refusal to so instruct on the grounds that Mrs. Roe's claim throughout the case was that the tractor was defective, not that it lacked crashworthiness. This statement, as will be later discussed, evidences the trial court's erroneous belief that crashworthiness was a cause of action separate and distinct from a strict liability case.

The district court acknowledged that all the evidence supported a finding that a ROPS would have protected the decedent in this accident, but concluded that, since the crux of the case was that the tractor was defective without the ROPS, confusion would have resulted if the concept of crashworthiness was introduced, in his opinion, for the first time during jury instruction.

### A. Elements of a Crashworthiness Case

On the surface, proving a strict liability case under Pennsylvania law appears simplistic: Was the product defective and was the defect the proximate cause of the injury? *Berkebile v. Brantly Helicopter Corp.*, 462 Pa. 83, 337 A.2d 893 (1975). This general expression, however, disguises the intricacies of its exercise, particularly when crashworthiness, a type of defect, is at issue.[1]

In crashworthy cases three elements must be established: (1) proof of an alternative safer design, practicable under the circumstances; (2) the resulting injuries if the safer design had been used; and, as a corollary to the second element, (3) the extent of the enhanced injuries attributable to the defective design. *Huddell v. Levin*, 537 F.2d 726 (3d Cir.1976).

A manufacturer is required to design a product reasonably fit for its intended use. The concept which distinguishes a crashworthiness case is that the manufacturer's liability is not artificially cut off simply because the manufacturer did not intend that its product be involved in a collision. The doctrine "extends liability to situations in which the defect did not cause the accident or initial impact, but rather increased the severity of the injury over that which would have occurred absent the defective design." *Barris v. Bob's Drag Chutes & Safety Equipment, Inc.*, 685 F.2d 94, 99 (3d Cir.1982).

Pennsylvania law, as predicted by the federal courts sitting in diversity, has dictated that the manufacturer must take into consideration in the design and manufacture of its product, the possibility that a product may be involved in an accident not of its own making. *Jeng v. Witters*, 452 F.Supp. 1349 (M.D.Pa.1978), *aff'd*, 591 F.2d 1335 (3d Cir.1979).[2]

Our review of the pleadings and trial record leads us to conclude that the concept of crashworthiness was present throughout the duration of the case. Although neither the term crashworthiness nor "buzz words" conjuring up the theory

---

**1.** Although not raised on appeal, because the matter is to be retried, we mention that in a Pennsylvania strict liability action the trial judge must make a threshold legal determination concerning liability, a preliminary step not taken in this matter. Under Pennsylvania law, before the case can be placed before the jury, the trial judge must decide whether the defect alleged, if proven, would render the product "unreasonably dangerous" as the term is defined in the Restatement 2d of Torts § 402a. *Azzarello v. Black Bros. Co.*, 480 Pa. 547, 558, 391 A.2d 1020, 1026 (1978). *See also Childers v. Joseph*, 842 F.2d 689 (3d Cir.1988); *Hon v. Stroh Brewery Co.*, 835 F.2d 510 (3d Cir.1987).

**2.** The crashworthiness doctrine as articulated in *Huddell v. Levin* is applicable to cases governed by Pennsylvania law. *See Jeng v. Witters*, 452 F.Supp. at 1361. Our research has found that the Pennsylvania Supreme Court has yet to affirm the crashworthiness doctrine by opinion. We note that in a Pennsylvania Superior Court case, although raised in the context of the collateral estoppel effect of a federal court case, the issue of crashworthiness was discussed and while not specifically adopted, the court's language did not suggest that the theory was incompatible with Pennsylvania law. *Day v. Volkswagenwerk Aktiengesellschaft*, 318 Pa.Super. 225, 464 A.2d 1313 (1983).

appeared in Roe's complaint, the general allegations concerning the defective condition of the tractor were sufficient to place the requisite elements of crashworthiness at issue. Crashworthiness is merely a subset of strict liability, and considering the liberal pleading philosophy of the federal rules, the complaint as pled would not preclude evidence of crashworthiness from being introduced in this case.

The evidence at trial was a clear attempt to prove liability based on lack of crashworthiness. Expert testimony on behalf of Roe was presented by John Sevart, president and chief engineer of a company that operates in the area of machine design, testing and certification of mechanical machinery. Sevart testified that the intended purpose of the ROPS was to prevent injury in the event of a tractor upset. The expert opined that since there was no way to design a tractor which would not upset, and considering the serious accidents which occur when a tractor does in fact roll over, the ROPS was necessary to protect the operator in the event of an accident.

Sevart next recounted to the jury his reconstruction of the accident. He surmised that the tractor went over a ledge of rock and then made a 270 degree roll, which meant that the tractor had rolled over, landed on its left side and went upside down and came back on its right side where it came to rest with Gordon Roe pinned under its fender. Sevart then gave his professional opinion, within a reasonable degree of engineering certainty, that if the tractor had been equipped with the ROPS, the roll of the vehicle would have been limited to 90 degrees. The witness was not, however, permitted to answer the follow-up question concerning whether he had arrived at an opinion as to the extent of the injuries sustained if the tractor had been equipped with the ROPS.

Deere's expert also testified as to the effectiveness of the ROPS in preventing serious injury in the event of a tractor upset. He, however, opined that the ROPS would not have prevented the 270 degree roll which occurred.

Did the pleadings and evidence establish a prima facie crashworthiness case under the requisites of *Huddell v. Levin?*[3] The first element—the availability of a practicable safer design—was basically uncontested.[4] Proof of the second requisite, the resulting injuries if the safer design theory had been used, and the third corollary factor, the extent of exacerbation attributable to the unsafe design, are less emphatically present. We conclude, however, that the evidence which was admitted concerning the effectiveness of the ROPS was sufficient for the trier of fact to draw the necessary inferences, *i.e.*, that if the tractor had not rolled over and crushed Roe, he would not have sustained the fatal injuries. To reach this conclusion would not require an engineer's expertise. It was not contested that the injuries were caused by the pinning of Roe's body under the tractor, nor was it challenged that these injuries were the cause of death. What probably occurred during the accident, an event to which Sevart did testify, was a question of fact within the jury's province. We thus conclude that the evidence admitted adequately presented a crashworthiness case to the jury.

We turn now to the converse argument that certain evidence designed to advance this theory was improperly excluded by the trial judge.

### B. Expert Testimony of John Sevart

█ Mrs. Roe's argument that the district court improperly excluded testimony that was to be offered by Sevart can be separated into three categories. First, Mrs. Roe asserts that the district court erred in forbidding Sevart from testifying as to the history of the development of ROPS. Second, Mrs. Roe maintains that it

---

**3.** Although not included as a part of the appendix, we are aware that crashworthiness as a theory of liability was also discussed in Roe's pre-trial brief.

**4.** Although Deere did not dispute that the ROPS was an effective or useful safety feature, it did premise its defense on the fact that ROPS may not be safe or practical for some farm functions and should remain an optional feature.

was error to exclude Sevart's reference to studies and statistics regarding the effectiveness of ROPS in preventing injuries resulting from vehicle rollovers. Third, Mrs. Roe claims that the district court was incorrect in sustaining objections to those questions seeking Sevart's opinion on the general effectiveness of ROPS in eliminating roll over injury, and on the specific effect on the decedent's injuries had ROPS been installed on the tractor.

While the district court justified its rulings on several grounds, a common thread was the court's mistaken belief that the effectiveness of ROPS was not at issue in the trial. The court noted that Deere had admitted, through its own expert witnesses, that ROPS was an effective device for the prevention of roll overs. Because the defense did not contest the issue of the effectiveness of ROPS, the district court ruled that the evidence in question did not go to what the court perceived as the ultimate issue in the case, namely, whether the tractor was defective without ROPS as standard equipment.

We recognize that generally decisions regarding admission of expert testimony rest within the sound discretion of the district court and will be reversed only in the event of an abuse of that discretion. *Seese v. Volkswagenwerk A.G.*, 648 F.2d 833 (3d Cir.), *cert. denied*, 454 U.S. 867, 102 S.Ct. 330, 70 L.Ed.2d 168 (1981). Where, however, the district court allegedly rests its decision on a misstatement of law, we examine its ruling for legal error. *In re Japanese Electronic Products*, 723 F.2d 238, 277 (3d Cir.1983), *rev'd on other grounds*, 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1985). We emphasize that the Federal Rules of Evidence establish a liberal policy of permitting expert testimony which will aid the trier of fact. *Knight v. Otis Elevator Co.*, 596 F.2d 84 (3d Cir. 1979). "Helpfulness is the touchstone of

Rule 702." *Breidor v. Sears, Roebuck & Co.*, 722 F.2d 1134, 1139 (3d Cir.1983). In determining whether the district court erred by excluding the expert's testimony in this case, we examine the tendered expert testimony and the importance in the context of this case.

Since the matter will be retried, we need only address the excluded evidence which was offered to demonstrate the specific effect of the roll over, *i.e.,* the extent of the injuries which would have been sustained if the tractor had been equipped with the ROPS.[5] Here, the jury heard the defense concede that the ROPS was effective in preventing serious injury, but this concession did not exclude the possibility that testimony from Sevart regarding the outcome of the accident if the tractor had been ROPS-equipped would have certainly been helpful, if not determinative.

In keeping with our conclusion that crashworthiness was a prominent theory in this case, we are compelled to find that refusal to permit Sevart to express an opinion concerning the extent of Gordon Roe's injuries if the tractor had been ROPS-equipped was inconsistent with a sound exercise of the court's discretion, albeit consistent with the court's misperception of Mrs. Roe's theory of recovery.[6] Sevart's evidence represented Roe's only effective means of advancing her theory of liability; its importance in the context of this case is that the evidence was paramount to proof of crashworthiness.

## C. Jury Instruction

Despite the thwart on her attempts to advance the crashworthiness theory through Sevart's testimony, the plaintiff nonetheless requested the district court to instruct the jury on the theory of liability based upon the lack of crashworthiness of

---

**5.** We, therefore, do not address the district court's rulings that certain evidence was irrelevant or cumulative.

**6.** As stated by the court:
  [W]hether the tractor was defective did not depend upon a showing of what would have happened to the decedent had the tractor been

equipped with a ROPS. The plaintiff was not required to show that the decedent would not have been injured or killed had the tractor been equipped with a ROPS.

This statement is at odds with the elements which are central to proof of a crashworthiness case.

the tractor. Mrs. Roe wanted the jury to be told that if they found the tractor was not reasonably crashworthy because of the absence of a ROPS, and that if they found that the death of Gordon Roe would probably have been prevented had the tractor been so equipped, then it may find that Deere was liable for the damages sustained. Deere likewise requested a crashworthy charge, although understandably with a defense-oriented bent.

In its memorandum opinion, the district court acknowledged that the defect in the product alleged by Mrs. Roe was the absence of the ROPS. It justified its refusal to instruct the jury by reference to the complaint and by stating that, "plaintiff's claim throughout this matter has been that the tractor was defective, not that it was not crashworthy."

The district court continued that the evidence in this case was to the effect that if the tractor had been equipped with the ROPS it would have protected the decedent—in effect, enumerating a prima facie crashworthy case—then inconsistently stated that to charge on crashworthiness would only serve to confuse the jury.

We restate that the language of the district court can only be interpreted as a misconstruction of the theory of crashworthiness. Contrary to law, the court characterized the lack of crashworthiness as a separate cause of action, a characterization we have already determined to be incorrect.

Deere argues that the general charge by the trial court that absence of a safety device would render the tractor defective cured the omission of a crashworthiness instruction. Considering, as we must, the charge as a whole, we find that nowhere in the court's instruction was the jury told that Mrs. Roe could recover from Deere if she proved that her husband's injuries would not have been so severe if the tractor had been equipped with the ROPS.

The undisputed presence of crashworthiness as a theory in this case compelled the court to instruct the jury on its elements. Failure to do so represented reversible error, requiring a re-trial of this matter.

### III.

To conclude, the error in this case is embodied in the district court's determination that crashworthiness was a distinct cause of action improperly positioned in this products liability case. We have determined, to the contrary, that crashworthiness was the predominant theory of the case, compelling the district court to permit admissible evidence concerning its proof to be heard and to instruct the jury on the requisites for recovery under this theory. We, therefore, will vacate the judgment entered in favor of the defendant and remand for proceedings consistent with this opinion.

