Pamela CRAIGIE, Individually and as Administratrix of the Estate of M. Brian Ball, Deceased

v.

GENERAL MOTORS CORPORATION.

Lynne PANCOAST, Individually and as Administratrix of the Estate of Christopher P. Avram, Deceased

v.

GENERAL MOTORS CORPORATION.

Paul T. GEE

v.

GENERAL MOTORS CORPORATION.

Frances M. SCHWEISS, Individually and as Administratrix of the Estate of Robert A. Schweiss, Deceased

v.

GENERAL MOTORS CORPORATION.

Robert FREEDENBERG, Sr. and Elizabeth Freedenberg, Individually and as Administrators of the Estate of Morris R. Freedenberg, Deceased

v.

GENERAL MOTORS CORPORATION.

Michael SERRATORE

v.

GENERAL MOTORS CORPORATION.

Civ. A. Nos. 87–5328 to 87–5332 and 87–5354.

United States District Court, E.D. Pennsylvania.

June 8, 1990.

Stephen R. Bolden, Philadelphia, Pa., Henry Koltys, Lyme, N.H., Richard J. Lyons, Connolly, Chandor & McAndrews, Warminster, Pa., for Pamela Craigie.

Bruce D. Hess, Howland Hess Guinan & Gorpey, Huntingdon Valley, Pa., for Robert Freedenberg, Sr. and Elizabeth K. Freedenberg.

John J. Connors, Jr., Southampton, Pa., for Michael Serratore.

Lawrence R. Scheetz, Richboro, Pa., for Frances M. Schweiss.

Edwin F. McCoy, LaBrum and Doak, Philadelphia, Pa., for Lynne Pancoast.

Thomas C. Branca, Stewart, Wood & Branca, Norristown, Pa., Richard S. March, Galfand Berger Senesky Lurie and March, Philadelphia, Pa., for Brassell's Red Stallion, Inc.

George J. Lavin, Jr., Francis P. Burns, III, George J. Lavin, Jr. Assoc., Thomas J. Bradley, Philadelphia, Pa., for General Motors Corp.

William B. Koch, Koch, Phelps and Cunningham, Norristown, Pa., David M. Kozloff, Kozloff, Diener, Payne & Fegley, Wyomissing, Pa., for Robert W. Baxter and Tyson Baxter.

## OPINION AND ORDER

VAN ANTWERPEN, District Judge.

### I. INTRODUCTION

This diversity case concerns multiple motor vehicle fatalities and injuries which occurred in Pennsylvania on Friday, September 13, 1985. We have before us a number

of motions, many of which were resolved in a pre-trial conference of all counsel held on Friday, June 1, 1990. Some of the motions were deferred until time of trial. In this opinion, we treat two remaining motions: Plaintiffs' Motion to Strike Third–Party Complaint and Plaintiffs' Motion in Limine to Have the Defendants Treated as Joint Tortfeasors. Although we would prefer to wait for trial, we must decide these motions now in fairness to the parties, so they may know how to prepare for trial.

On the Friday in question at approximately 11:35 P.M., seven young men were passengers in a 1973 Chevrolet Blazer motor vehicle being driven by one Tyson Baxter. He was driving in an easterly direction on State Route 132, known as Street Road, in Upper Southampton Township, Bucks County, Pennsylvania. On that unfortunate night, the vehicle collided with another vehicle, a utility pole, and a light standard, injuring the driver and killing four of his passengers: *M. Brian Ball, Christopher P. Avram, Robert A. Schweiss and Morris R. Freedenberg.* All four were ejected from the vehicle during impact. Two passengers, Michael Serratore and Paul T. Gee, received serious injuries, and one passenger, John Gahan, received only minor injuries and is not a party to this or any other lawsuit. Chemical tests showed that the blood alcohol level of the driver, Tyson Baxter, was .14, which is above the .10 required to trigger a presumption of driving under the influence of alcohol as set forth in the Pennsylvania Motor Vehicle Code, 75 Pa.Cons.Stat.Ann. § 1547 (Purdon 1983 & Supp.1989). Tyson

Baxter was only 17 at the time and the blood alcohol level of the four young men who were killed was also above the .10 level. Representatives of the estates of these young men who were killed, along with those who were injured, have brought suits[1] in the Court of Common Pleas of Bucks County, Pennsylvania,[2] and have filed separate suits in this Court which have been consolidated for trial.[3]

Plaintiffs originally brought suit in this Court against General Motors Corporation ("General Motors") as the manufacturer of the 1973 Chevrolet motor vehicle, claiming that the design of this product was defective and also that General Motors was negligent in designing the vehicle. More specifically, plaintiffs claim that the 1973 Chevrolet vehicle should have been capable of retaining its occupants inside during a collision. Plaintiffs allege that had the occupants remained inside the vehicle, they would have received only minor injuries. General Motors has, in turn, filed a third-party complaint impleading the driver of the 1973 Chevrolet motor vehicle, Tyson Baxter, and his father, Robert Baxter.[4] General Motors has filed a third-party complaint alleging negligence[5] on the part of of Tyson Baxter and asserting liability for contribution or indemnity as to General Motors, as well as sole liability as to each plaintiff. General Motors has also asserted conduct which would amount to contributory negligence on the part of the decedents and plaintiffs in its answer. Tyson Baxter has filed a third-party complaint joining a local tavern, Brassell's Red Stal-

---

**1.** Suit is brought on behalf of those killed as a wrongful death and survival action. 42 Pa. Cons.Stat.Ann. §§ 8301, 8302 (Purdon 1982 & Supp.1989).

**2.** It appears that the named defendants in the State action do not include General Motors, but do include Tyson Baxter, Robert Baxter, another motorist, a local tavern, Centennial School District, the Commonwealth of Pennsylvania, Upper Southampton Township, and others.

**3.** The Court issued an Order on July 5, 1988 consolidating all six cases. The driver, Tyson Baxter, also filed suit in this Court to No. 87–5682, which was dismissed by stipulation on February 2, 1990.

**4.** The father was joined on theories of agency and negligent entrustment. By stipulation of all counsel, the father was dismissed as a party on October 28, 1988.

**5.** In view of the allegations of driving while intoxicated, Tyson Baxter's conduct may be viewed as willful and wanton, outrageous, or reckless. *Woodson v. AMF Leisureland Centers, Inc.,* 842 F.2d 699, 704 (3d Cir.1988); *Focht v. Rabada,* 217 Pa.Super. 35, 41, 268 A.2d 157 (1970); Restatement (Second) of Torts § 500 comment d (1965). *See also, Frederick v. P.R.T. Co.,* 337 Pa. 136, 140, 10 A.2d 576 (1940).

lion, Inc., pursuant to 47 Pa.Stat.Ann. § 4–493(1) (Purdon Supp.1989).

Plaintiffs' claims against General Motors are all based upon what has come to be called the "crashworthiness", "enhanced injury", or "second collision" theory. We shall refer to these terms collectively as "crashworthiness". In their motion to strike the third-party complaint, plaintiffs maintain that the third-party joinder is improper because General Motors and the driver are not true joint tortfeasors. They point out that General Motors' liability would be based upon products liability and the crashworthiness doctrine, whereas the liability of the driver, Tyson Baxter, would be based upon traditional negligence concepts. Plaintiffs maintain in their motion in limine that, if joinder is permitted, the Court should then treat General Motors and all other defendants as joint tortfeasors and place on them the burden of proving that portion of the total harm each was responsible for. Before we discuss all these motions in detail, we shall review the evolution of the crashworthiness doctrine.

## II. CRASHWORTHINESS

■ The crashworthiness doctrine was first articulated in *Larsen v. General Motors Corp.*, 391 F.2d 495 (8th Cir.1968). The court in *Larsen* stated: "The manufacturer's duty to use reasonable care in the design and manufacture of a product to minimize injuries to its users and not to subject its users to an unreasonable risk of injury in the event of a collision or impact should be recognized by the courts." *Id.* at 504. The court based its holding upon negligence concepts [6] "with each state free to supplement common law liability for negligence with a doctrine of strict liability for tort...." [7] *Id.* at 503 n. 5. The duty established under *Larsen* is for a designer to eliminate "any unreasonable risk of foreseeable injury", *id.* at 503, and "[t]he duty

of reasonable care in design should be viewed in light of the risk." *Id.* At the same time, motor vehicle designers are not under any duty to "design an accident proof or fool-proof vehicle." *Id.* at 502.

*Larsen's* statement that the courts should recognize a duty proved to be prophetic and, in the twenty-two years since the *Larsen* decision, many courts have recognized the crashworthiness doctrine. In this District, we turn for fundamental guidance to the opinion of the Third Circuit in *Huddell v. Levin*, 537 F.2d 726 (3d Cir. 1976). In *Huddell*, a motorist was killed in New Jersey after being struck in the rear of his stopped automobile. A diversity suit was brought against General Motors claiming that the motorist's automobile seat headrest was improperly designed, causing a serious skull fracture and extensive brain damage. The claims against General Motors were for breach of warranty. Claims in negligence were also brought in the same suit against the driver who struck the vehicle from behind. After relating the problems inherent in forecasting how state law will evolve and also noting that in New Jersey the warranty doctrine had developed into the doctrine of strict liability, the Court of Appeals stated, at page 735:

> We take it as beyond peradventure that an automobile manufacturer today has some legal obligation to design and produce a reasonably crashworthy vehicle. The manufacturer is not required to design against bizarre accidents; the manufacturer is not required to produce an accident-proof vehicle. But the manufacturer is required to take reasonable steps—within the limitations of cost, technology, and marketability—to design and produce a vehicle that will minimize the unavoidable danger.... [T]he manufacturer must consider accidents among the "intended" uses of its product.

---

**6.** The court cited authority starting with *MacPherson v. Buick Motor Co.*, 217 N.Y. 382, 111 N.E. 1050 (N.Y.1916), and discussed, in particular, two Third Circuit cases, *Brandon v. Yale & Towne Manufacturing Co.*, 342 F.2d 519 (3d Cir.1965) and *Carpini v. Pittsburgh and Wierton Bus Co.*, 216 F.2d 404 (3d Cir.1954).

**7.** Since *Larsen,* the concept of products liability has become firmly entrenched in most states, including Pennsylvania. *See,* for instance, *Berkebile v. Brantly Helicopter Corp.*, 462 Pa. 83, 337 A.2d 893 (1976).

The court, in *Huddell*, went on to note, at pages 738–739:

> We do not perceive the analysis of "second collision" or "enhanced injury" cases to track the legal lore surrounding concurrent tortfeasor actions which ... "have combined *contemporaneously* to cause the injuries." ... [the driver] may be held liable for *all* injuries, but General Motors may only be held liable for "enhanced injuries". Analogies to concurrent actions combining to cause a *single impact* are simply not applicable.... Traditional negligence concepts determine the case against [the driver] and the extent of his liability.
>
> ... Plaintiff may not argue that the ultimate fact of death is divisible for purposes of establishing G.M.'s liability and then assert that it is indivisible in order to deny to G.M. the opportunity of limiting damages. (Emphasis added in original).

On the issue of apportionment of damages, the court in *Huddell*, at page 742, noted the possible application of a rule like that announced in *Dole v. Dow Chemical Co.*, 30 N.Y.2d 143, 331 N.Y.S.2d 382, 282 N.E.2d 288 (1972). The court in *Huddell*, at page 742, quoted the court in *Dole* thus:

> [w]here a third party is found to have been responsible for a part, but not all of the negligence ..., the responsibility for that part is recoverable by the prime defendant against the third party. To reach that end there must necessarily be an apportionment of responsibility in negligence between those parties. The adjudication ... may be sought in a separate action ... or as a separate and distinguishable issue by bringing in the third party in the prime action.

The court in *Huddell* went on to note that *Dole* did not involve apportionment of negligence and products liability or "second collision" liability. In the treatment of crashworthiness cases, *Huddell*, at page 742, pointed out the need for "fresh legal thinking on the part of courts."

We have not hesitated to refer to the majority opinion in *Huddell* as the "court", because Judge Rosenn was careful to note expressly, at page 744 in his concurring opinion, that, with the exception of the burden of proof on two elements, he joined in the majority opinion of *Huddell*. This reinforced the rule formulated by *Huddell* for proof of crashworthiness cases. According to the majority opinion at 737–738, the plaintiff has the burden of proving three sometimes difficult elements:

> (1) that the design was defective and that an alternative safer design [8] practicable under the circumstances existed;
>
> (2) what injuries, if any, would have resulted in the accident in question had the alternative safer design been used; and
>
> (3) some method of establishing the extent of enhanced injuries attributable to the defective design.

The concurring opinion in *Huddell* would place the burden of proving the last two elements on the defendants, in keeping with the more traditional approach of existing tort law. Noting that the driver and automobile manufacturer are, at best, concurrent rather than joint tortfeasors, the concurring opinion went on to note traditional authority for placing the burden of proving apportionment on such defendants. Since the *Huddell* decision in 1976, a number of decisions have adopted a view similar to the concurring opinion: *McLeod v. American Motors Corp.*, 723 F.2d 830

---

**8.** We note that, in a Pennsylvania products liability case, negligence concepts, such as evidence of industry standards or "state of the art" practice, are usually not admissible. *Santiago v. Johnson Machine and Press Corp.*, 834 F.2d 84 (3d Cir.1987); *Lewis v. Coffing Hoist Division, Duff–Norton Co., Inc.*, 515 Pa. 334, 528 A.2d 590 (Pa.1987). It is difficult to insulate against negligence concepts when a design rather than a manufacturing defect is involved. *Foley v. Clark Equipment Co.*, 361 Pa.Super. 599, 523 A.2d 379 (1987); *McKay v. Sandmold Systems, Inc.*, 333 Pa.Super. 235, 482 A.2d 260 (1984). Some relaxation of this rule may be necessary properly to prove, in crashworthiness cases, that "an alternative safer design practicable under the circumstances existed." Of course, the trial court must always address negligence concepts when it makes its risk versus utility weighing analysis prior to submitting a products liability case to the jury. *See Foley*, 523 A.2d at 388.

(11th Cir.1984); *Mitchell v. Volkswagenwerk, AG,* 669 F.2d 1199 (8th Cir.1982); *Fox v. Ford Motor Co.,* 575 F.2d 774 (10th Cir.1977); *Richardson v. Volkswagenwerk, A.G.,* 552 F.Supp. 73 (W.D.Miss.1982); *Fouche v. Chrysler Motors Corp.,* 103 Idaho 249, 646 P.2d 1020 (1982); *Sumnicht v. Toyota Motor Sales, Inc.,* 121 Wis.2d 338, 360 N.W.2d 2 (1984). Other courts have followed the majority view of the Third Circuit: *Cleveland v. Piper Aircraft Corp.,* 890 F.2d 1540 (10th Cir.1989); *Caiazzo v. Volkswagenwerk, A.G.,* 647 F.2d 241 (2d Cir.1981); *Stonehocker v. General Motors Corp.,* 587 F.2d 151 (4th Cir.1978). Crashworthiness remains a new and evolving doctrine and the burden of proof would seem properly to belong on a party asserting such a doctrine.

The Third Circuit has remained steadfast in the position it took in *Huddell* and has reaffirmed this in *Barris v. Bob's Drag Chutes & Safety Equipment, Inc.,* 685 F.2d 94 (3d Cir.1982). For a time, there remained the question of whether the *Huddell* doctrine also applied in Pennsylvania. Although the Pennsylvania Supreme Court has yet to answer this question, any question about the position of the Third Circuit was resolved by the recent case of *Roe v. Deere and Co., Inc.,* 855 F.2d 151 (3d Cir. 1988), in which suit was brought for a fatality in an agricultural tractor roll-over accident in Pennsylvania. The plaintiff maintained that the tractor should have been equipped with a seat belt and roll-over protective structure ("ROPS"). The court noted that "[i]t was not disputed that the ROPS was an available feature and could have been implemented as a part of the design of this tractor." *Id.* at 152. The court in *Roe,* at page 153, then cited the three elements of *Huddell* which must be proven in a crashworthiness claim: (1) an alternative safer design practicable under the circumstances; (2) the resulting injuries if the safer design had been used; and (3) the extent of the enhanced injuries attributable to the defective design. On the same page, the court stated in note 2:

> The crashworthiness doctrine as articulated in *Huddell v. Levin* is applicable to cases governed by Pennsylvania law.

*See Jeng v. Witters,* 452 F.Supp. 1349, 1361 (M.D.Pa.1978).... We note that in a Pennsylvania Superior Court case, although raised in the context of the collateral estoppel effect of a federal court case, the issue of crashworthiness was discussed and while not specifically adopted, the court's language did not suggest that the theory was incompatible with Pennsylvania law. *Day v. Volkswagenwerk Aktiengesellschaft,* 318 Pa. Super. 225, 464 A.2d 1313 (1983).

To sum up the foregoing, in a crashworthiness case the plaintiff must prove the following three elements by the fair weight or preponderance of the evidence: (1) that the design of the vehicle was defective and that when the design was made, an alternative, safer design practicable under the circumstances existed; (2) what injuries, if any, would have resulted to the plaintiff had the alternative, safer design, in fact, been used; and (3) some method of establishing the extent of plaintiff's enhanced injuries attributable to the defective design.

■ The law only requires that a designer eliminate any unreasonable risk of foreseeable injury. A designer is required to take reasonable steps—within the limitations of cost, technology and marketability—to design and produce a vehicle that will minimize unavoidable danger. The manufacturer must consider that accidents can happen. At the same time, the duty to design with reasonable care must be viewed in light of the risk. The designer does not have to design an accident-proof or fool-proof vehicle, or one which will withstand bizarre accidents. The designer is entitled to expect normal use of a vehicle and, for instance, does not have to make a car that can float.

## III. MOTIONS TO STRIKE THIRD-PARTY COMPLAINTS

■ Against this background, a majority of the plaintiffs now ask us to prevent the joinder of the driver of the motor vehicle. Plaintiffs cite two district court cases which refused such joinder because crash-

worthiness defendants and negligence defendants are not true joint tortfeasors. *Hanninen, Jr. v. Toyota Motor Company, Ltd.*, No. 84–6013 (E.D.Pa. Feb. 14, 1985) and *Robbins v. Yamaha Motor Corp., U.S.A.*, 98 F.R.D. 36 (M.D.Pa.1983). We have reviewed both these opinions and, while we have great respect for the views put forth, we believe that they are inapplicable to the present case.

■ We begin by noting that plaintiffs are proceeding on both negligence *and* products liability claims pertaining to crashworthiness. They have every right to do so in any standard Pennsylvania products liability case, and no election of remedies is required prior to or at trial.[9] *Olsen v. United States*, 521 F.Supp. 59, 65 (E.D. Pa.1981), *aff'd mem.*, 688 F.2d 823 (3d Cir. 1982), *cert. denied*, 459 U.S. 1107, 103 S.Ct. 732, 74 L.Ed.2d 956 (1983); *Svetz for Svetz v. Land Tool Co.*, 355 Pa.Super. 230, 513 A.2d 403 (1986); *Sherk v. Daisey–Heddon*, 498 Pa. 594, 450 A.2d 615, 617 (1982); *Annot.*, 52 A.L.R.3d 101 (1973).

■ Fed.R.Civ.P. 14(a) provides that a defendant may implead a person "not a party to the action who is or may be liable to him for all or part of plaintiff's claim against him." This rule requires that the defendant implead a person against whom he can assert a right of contribution or indemnification. Direct liability to the original plaintiff, standing alone, is not enough. *Owen Equipment & Erection Co. v. Kroger*, 437 U.S. 365, 368 n. 3, 98 S.Ct. 2396, 2399–2400 n. 3, 57 L.Ed.2d 274 (1978); *Cook v. Cook*, 559 F.Supp. 218, 219 (E.D. Pa.1983). The right of a defendant such as General Motors to implead negligence defendants in a normal negligence action would seem obvious.

The question remains as to whether a negligent driver may be joined in a products liability case. When federal courts sit in diversity cases, they must apply the substantive law of the states where they sit. *Erie Railroad Co. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938).

When they are required to interpret or apply state law, they must consider and accept the decisions of the state's highest court as the ultimate authority regarding state law. *Ciccarelli v. Carey Canadian Mines, Ltd.*, 757 F.2d 548, 553 (3d Cir. 1985); *Connecticut Mutual Life Insurance Co. v. Wyman*, 718 F.2d 63, 65 (3d Cir.1983). When, however, the highest court of the state has not authoritatively considered the issue, "our disposition of such cases must be governed by a prediction of how the state's highest court would decide were it confronted with the problem." *McKenna v. Ortho Pharmaceutical Corp.*, 622 F.2d 657, 661 (3d Cir.1980), *cert. denied*, 449 U.S. 976, 101 S.Ct. 387, 66 L.Ed.2d 237 (1980). *See also Becker v. Interstate Properties*, 569 F.2d 1203, 1205 (3d Cir.1977), *cert. denied*, 436 U.S. 906, 98 S.Ct. 2237, 56 L.Ed.2d 404 (1978). In this effort, the federal court must give "proper regard" to the relevant rulings of other courts within the state. *Commissioner v. Estate of Bosch*, 387 U.S. 456, 465, 87 S.Ct. 1776, 1783, 18 L.Ed.2d 886 (1965). *See also Erie Castings Co. v. Grinding Supply, Inc.*, 736 F.2d 99, 100 (3d Cir.1984); *Wyman*, 718 F.2d at 65.

Pennsylvania tort law takes the position that multiple substantial factors may cooperate to produce an injury. *Takach v. B.M. Root Company*, 279 Pa.Super. 167, 420 A.2d 1084 (1980). Pennsylvania, along with some twenty other states, has adopted the Uniform Contribution Among Joint Tortfeasors Act, 42 Pa.Cons.Stat.Ann. § 8324(b) (Purdon 1982), as well as comparative negligence, 42 Pa.Cons.Stat.Ann. § 7102 (Purdon 1982 & Supp.1989). The express language of the Uniform Contribution Among Joint Tortfeasors Act does not limit the right of contribution to any particular kind of torts. Although the Pennsylvania Supreme Court has not yet spoken, a substantial body of Pennsylvania case law now recognizes the right of the defendant who has been sued on a theory of strict

---

9. Plaintiffs have indicated at their conference with the Court that they intend fully to pursue their negligence claims at trial, in addition to their products liability claims.

liability to seek contribution[10] from all those whose negligent or tortious acts are alleged to be contributing causes of harm. *Walton v. AVCO Corp.*, 383 Pa.Super. 518, 557 A.2d 372, 385–387 (1989); *McMeekin v. Harry M. Stevens, Inc.*, 365 Pa.Super. 580, 530 A.2d 462 (1987), *appeal denied*, 518 Pa. 618, 541 A.2d 746 (1988); *Svetz*, 513 A.2d 403; *Burgan v. City of Pittsburgh*, 115 Pa.Commw. 566, 542 A.2d 583 (1988); *Commonwealth Department of Transportation v. Popovich*, 117 Pa. Commw. 14, 542 A.2d 1056 (1988), *aff'd per curiam*, 522 Pa. 508, 564 A.2d 159 (1989).

The federal courts have also recognized this right to contribution. *Rabatin v. Columbus Lines, Inc.*, 790 F.2d 22 (3d Cir. 1986); *Chamberland v. Carborundum Company*, 485 F.2d 31 (3d Cir.1973); *Smith v. Kolcraft Products, Inc.*, 107 F.R.D. 767 (M.D.Pa.1985). Accordingly, it would seem that the right of defendants such as General Motors to implead a negligence defendant in a normal products liability action is clear. The final question in this regard remains as to whether the normal rule in a negligence or products liability case is in any way changed by the nature of a crashworthiness case. We think some form of contribution and hence liability, under Fed.R.Civ.P. 14(a), still applies.

Pennsylvania law has long recognized that a tortfeasor may be responsible for only part of an injury or injuries. *McAllister v. Pennsylvania Railroad Co.*, 324 Pa. 65, 187 A. 415 (1936); *Smialek v. Chrysler Motors Corp.*, 290 Pa.Super. 496, 434 A.2d 1253 (1981); *Embrey v. Borough of West Mifflin*, 257 Pa.Super. 168, 390 A.2d 765 (1978). *Embrey* involved accident injuries which were made worse by medical malpractice. Credible evidence from plaintiff's expert delineated those damages caused by the malpractice from those caused by the accident. *Embrey* adopted Section 433A of the Restatement (Second) of Torts (1965), Apportionment of Harm to Causes, which provides:

> (1) Damages for harm are to be apportioned among two or more causes where
>
> > (a) there are distinct harms, or
> >
> > (b) there is a reasonable basis for determining the contribution of each cause to a single harm.
>
> (2) Damages for any other harm cannot be apportioned among two or more causes.

*See also Maurer v. United States*, 668 F.2d 98, 100 (2d Cir.1981); *Evans v. S.J. Groves & Son Company*, 315 F.2d 335 (2d Cir. 1963).

In particular, we note that although the court did not use terms such as crashworthiness in *Svetz*, 513 A.2d 403, the facts, without question, amounted to a crashworthiness claim. Mr. Svetz was killed in a motorcycle accident in Pennsylvania in 1980. Suit was brought against the manufacturer and seller of his crash helmet because the helmet split open on impact, making his injuries worse. The manufacturer joined as additional defendants the tavern keeper[11] who allegedly served the decedent alcoholic beverages, as well as a fellow motorcyclist who had allegedly been racing with Svetz. The Superior Court held the joinder to be proper and said contribution[12] would apply to all the defendants.

---

**10.** Pa.R.Civ.P. 2252(a) permits a defendant in a Pennsylvania State Court to join as an additional defendant anyone "who may be alone liable or liable over to him on the cause of action ... or jointly or severally liable thereon with him, or who may be liable to the joining party on any cause of action ... arising out of the transaction or occurrence...." While this is a broader rule than its federal counterpart, Fed.R.Civ.P. 14(a), the decisional law makes it clear that this is not the only reason Pennsylvania law now permits joinder of strict liability and negligence defendants in one action.

**11.** Liability of a dramshop under 47 Pa.Stat. Ann. § 4–493(1) (Purdon Supp.1989) is no long-er absolute and is based on negligence principles. *Matthews v. Konieczny*, 515 Pa. 106, 527 A.2d 508, 512 (1987).

**12.** As noted in *Svetz*, 513 A.2d at 407, the Uniform Contribution Among Joint Tortfeasors Act provides in its definition section, 42 Pa.Cons. Stat.Ann. § 8322 (Purdon 1982), that the term joint tortfeasors means "two or more persons jointly or severally liable in tort for the *same* injury to persons...." (Emphasis supplied). The rationale of the Pennsylvania cases allowing joinder and contribution from all types of tort defendants is not based solely on this Act.

We also look to *Huddell,* 537 F.2d 726, for guidance. Although Levin was named by plaintiff as a defendant, Levin was nevertheless a negligence defendant in the case of *Huddell, id.* at 731. As we have already noted, the Third Circuit found no fault with the presence of a negligence defendant in the case and stated that traditional negligence concepts applied to such a defendant, whereas the crashworthiness doctrine applied to the vehicle manufacturer. The court in *Huddell* went on to note that damages should be apportioned among such defendants. Accordingly, case law requires that we deny plaintiffs' motion to strike General Motors' third-party complaint. Furthermore, as a practical matter, we already have several state and federal actions in this matter. We will not, from the standpoint of judicial economy, break this unfortunate matter up into yet even more separate suits. How many times must the parties come to court?

## IV. MOTIONS CONCERNING JOINT TORTFEASORS

 In the event that joinder of the negligence defendants is permitted, plaintiffs have also asked this Court to treat all defendants as joint tortfeasors. Plaintiffs state that under *Mitchell,* 669 F.2d 1199, and the other cases cited with it, every defendant was treated as a joint tortfeasor causing a single indivisible harm. They point to Pennsylvania cases which place the burden of proving "how much harm they have caused" on tort defendants who claim to have only caused part of an injury. *See Corbett v. Weisband,* 380 Pa.Super. 292, 551 A.2d 1059 (1987) and *Glomb v. Glomb,* 366 Pa.Super. 206, 530 A.2d 1362, 1365 (1987). They also point out that death is usually incapable of any logical, reasonable

or practical division. In effect, plaintiffs want to place the often difficult burden on General Motors of proving the third element of plaintiffs' crashworthiness claim: "The extent of enhanced injuries attributable to defective design." With this approach, in the absence of such proof, defendants wind up being responsible for all injuries.

This we will not do. We have already discussed the holding of *Huddell,* 537 F.2d 726, and the reasons for it. Until such time as the Pennsylvania Supreme Court speaks, *Huddell* with the added force of *Roe,* 855 F.2d 151, governs the burden of proof in this District for crashworthiness cases. The defendants are concurrent tortfeasors and the plaintiffs must prove all three elements, including the extent of enhanced injuries attributable to the alleged defective design. Once proven, the degree of fault of all defendants can be apportioned using a process of comparative fault. *Rabatin,* 790 F.2d 22; *Burgan,* 542 A.2d 583; *McMeekin* [13], 530 A.2d 462.

 We may take some guidance from the comments found in the Restatement (Second) of Torts § 886A (1979), Contribution Among Tortfeasors.[14] Two methods of apportionment are proposed in the comments to this section. The first is to divide up the common liability pro rata into equal shares according to the number of defendants found liable. The second is to assess a percentage of responsibility to each defendant. This latter method seems far fairer and more equitable. This, according to *Dole,* 30 N.Y.2d 143, 331 N.Y. S.2d 382, 282 N.E.2d 288, as quoted in *Huddell,* 537 F.2d 726, may be done in one action, provided the apportionment is a separate and distinguishable issue.[15] Al-

---

**13.** Although it is called "comparative contribution", *McMeekin,* 530 A.2d 462, in effect, adopts comparative fault. This is noted in *Walton,* 557 A.2d 372, which, on the other hand, proposes its own novel approach of "comparative causation", an approach which Judge Brosky correctly states in his dissent, 557 A.2d at 390, "is not extant, either in any legislation or in any judicial determination...."

**14.** The right of contribution exists only in favor of a tortfeasor who has discharged the entire

claim for the harm by paying more than his equitable share of the common liability, and is limited to the amount paid by him in excess of his share. No tortfeasor can be required to make contribution beyond his own equitable share of the liability. Restatement (Second) of Torts § 886A(2) (1979).

**15.** *McMeekin,* 530 A.2d 462, and *Burgan,* 542 A.2d 583, propose a procedural step for Pennsylvania courts in which the jury would try the percentage of apportionment separately from

though the Pennsylvania legislature has yet to pass a law adopting comparative fault, the case law appears to have come a long way since this judge first dealt with this problem in *Capuano v. Echo Bicycle Co.*, 27 D. & C.3d 524 (Northampton Cy.Pa. C.P.1982). There still remains the possible problem at trial of dealing with the apportionment of any contributory negligence on the part of the decedents or plaintiffs. Apportionment is required in negligence cases under 42 Pa.Cons.Stat.Ann. § 7102. However, in cases of strict liability or willful and wanton conduct, contributory negligence of a plaintiff is usually of no moment. *See Berkebile*, 337 A.2d 893; *Popovich*, 542 A.2d 1056. We may have to mold the verdict or grant other equitable relief to plaintiffs. This highlights some of the practical, mechanical problems that must be met separately to implement comparative fault in special interrogatories on a verdict sheet.

An appropriate order follows.

### ORDER

AND NOW, this 8th day of June, 1990, consistent with the foregoing opinion, the Court enters the following order:

1. the plaintiffs' Motion to Strike Third-Party Complaint, filed on December 10, 1987, is hereby DENIED;

2. the plaintiffs' Motion in Limine to Have the Defendants Treated as Joint Tortfeasors, filed on April 2, 1990, is hereby DENIED.

In addition, after a conference with all counsel, the Court makes the following disposition of outstanding motions and certain letters concerning discovery:

3. the defendant General Motors' Motion to Bifurcate Trial, filed on March 30, 1990, is GRANTED with the agreement of the plaintiffs. Liability will be tried first. This motion is granted with the understanding that all counsel agree to comparative fault being determined in the liability phase of the trial;

4. the defendant General Motors' Motion for Leave to Amend Answers, filed on April 12, 1990, is GRANTED, there being no opposition to this motion;

5. the plaintiffs' Motion in Limine to Exclude Evidence of Adjudication of Delinquency and Summary Convictions, filed on April 2, 1990, is GRANTED. Defendants do not oppose this motion. In the event that the plaintiffs "open the door" to such evidence, it may, however, be produced;

6. by no later than Friday, June 15, 1990, the defense will produce copies of the three items listed as not produced in their letter of May 29, 1990. It is recognized, however, that the advertising documents may not be able to be identified;

7. the defendant General Motors' Motion for Partial Summary Judgment with Respect to Plaintiffs' Claims for Punitive Damages, filed on March 30, 1990, is DENIED without prejudice to the right of the defendant to reassert this motion at the close of the plaintiffs' case, if any, on damages;

8. the plaintiffs' Motion to Exclude Evidence of Drinking or Intoxication, filed on April 2, 1990, is DEFERRED UNTIL THE TIME OF TRIAL;

9. the defendant General Motors' Motion to Preclude Evidence of Other Occurrences, Motion to Preclude Introduction of Documents Descriptive of Alternative Designs, Optional Equipment and Accessories, and Motion in Opposition to Admissibility of Rollover Reports, filed on March 30, 1990, are DEFERRED UNTIL THE TIME OF TRIAL;

10. the trial is set for three weeks, beginning on December 3, 1990. All counsel are now attached for trial.

---

liability and damages. Although this clearly separates these concepts, multiple defendant products liability and negligence trials already tend to be bifurcated and lengthy. This could result in trifurcation which may prove to be unwieldy and too time consuming for a jury.

We believe that the percentage apportionment issue may be adequately distinguished and separated from liability and damage issues by a measure such as withholding our charge on comparative fault until after liability is determined by the jury.