**Ana Ilsen CARRASQUILLA and Olga Lucia LaPrade, as Co–Administratrices of the Estate of Argenix Suarez, deceased; Marco Carrasquilla; and Ana Ilsen Carrasquilla, Plaintiffs,**

v.

**MAZDA MOTOR CORP., a/k/a Mazda Motors Corp., Mazda (North America), Inc.; and Mazda Motor of America, Inc., Defendants,**

v.

**Mark THOMPSON, Third–Party Defendant.**

**No. 4:CV–96–2240.**

United States District Court, M.D. Pennsylvania.

May 9, 1997.

---

Clifford A. Rieders, Williamsport, PA, for plaintiffs.

Carl A. Eck, Meyer, Darragh, Buckler, BeBenik, Eck & Hall, Pittsburgh, PA, for defendants.

## MEMORANDUM

McCLURE, District Judge.

### BACKGROUND:

On December 31, 1996, plaintiffs initiated this action with the filing of a complaint alleging various state-law claims arising from a motor vehicle accident which occurred within the Middle District of Pennsylvania on December 31, 1994. Succinctly stated, plaintiffs allege that an automobile manufactured and/or marketed by defendants was not designed to protect sufficiently the passengers should an accident occur.

On February 18, 1997, defendant Mazda Motors of America ("MMA") filed a third-party complaint against Mark Thompson, the driver of a vehicle which in fact was involved in an accident with plaintiffs' vehicle.

Before the court is a motion by Thompson to strike the third-party complaint.

### DISCUSSION:

#### I. STANDARD OF REVIEW

The applicable Federal Rule of Civil Procedure provides in relevant part:

At any time after commencement of the action a defending party, as a third-party plaintiff, may cause a summons and complaint to be served upon a person not a party to the action who is or may be liable to the third-party plaintiff for all or part of the plaintiff's claim against the third-party plaintiff. . . .

Fed.R.Civ.P. 14(a). Rule 14(a) also permits any party to move to strike the third-party complaint.

#### II. STATEMENT OF FACTS/CLAIMS ALLEGED

As recited in the complaint, the following facts and claims are applicable to the instant motion.

Plaintiff Ana Carrasquilla was the owner of a 1994 Mazda Protégé ("the car"), which was equipped with a motorized front passive restraint system and manual lapbelts.

On December 31, 1994, plaintiff Marco Carrasquilla was operating the car in the northbound lane of State Route 15 in Armstrong Township, Lycoming County, Pennsylvania. Plaintiff Argenix Suarez was in the front passenger seat and Ana Carrasquilla was in the right rear seat. Third-party defendant Mark Thompson was operating a 1994 Nissan SE Extra Cab pickup truck in the southbound passing lane of Route 15. Thompson lost control of his vehicle and crossed the center line. The left front of Thompson's vehicle struck the car on the left front. The accident occurred at approximately 3:44 p.m.

Suarez was transported to the Williamsport Hospital and Medical Center. Resuscitation efforts there were unsuccessful, and Suarez was pronounced dead at 4:34 p.m. Marco Carrasquilla also suffered serious injuries and was transported to the Hospital, where emergency surgery was performed. He remained in the Hospital until March 21, 1995. Ana Carrasquilla witnessed the injuries to Suarez and Marco Carrasquilla, and suffered emotional distress and physical injuries.

Defendants are Mazda Motor Corp., Mazda (North America), Inc., and Mazda Motor of America, Inc. They are alleged to have manufactured and/or marketed the car.

The complaint sets forth ten counts, one of which (Count X) was stricken by the court as not setting forth a cause of action. The remaining claims are:

Count I—Strict Product Liability

Count II—Negligence

Count III—Misrepresentation

Count IV—Breach of Warranty

Count V—Punitive Damages [1]

Count VI—Negligent Infliction of Emotional Distress [2]

Count VII—Wrongful Death

Count VIII—Survival Action

Count IX—Loss of Consortium

Each of the remaining claims is based on the allegation that the car lacked an adequate passenger restraint system and therefore was not crashworthy.

### III. REVIEW OF CLAIMS

The parties recite the same cases and the same principles of law, and appear to agree that the question is whether the Mazda defendants and Thompson may be considered joint tortfeasors. *See generally Harries v. GMC,* 786 F.Supp. 446, 447 (M.D.Pa.1992) (issue before court in crashworthiness case is whether negligent driver/third-party defendant and manufacturer/third-party plaintiff/defendant are joint tortfeasors). We previously have ruled that they are not, *Harries* at 448, and continue to hold that view.

 To establish a claim that a vehicle was not crashworthy, the plaintiff must establish that: "(1) the design of the product was defective; (2) when the design was made, an alternative, safer design, practicable under the circumstances existed; (3) what injuries, if any, the plaintiff would have received had the alternative, safer design, been used; and (4) what injuries were attributable to the defective design." *Barker v. Deere and Co.,* 60 F.3d 158, 160–161 n. 3 (3d Cir.1995) (citation omitted), *reh'g in banc*

*denied.* That is, it is the plaintiff's burden to show what injuries were suffered, and which would not have been suffered had the product been crashworthy. It is the latter injuries for which the defendant may be liable.

MMA first points to the undersigned judge's opinion in *Harries* to the effect that, since the injuries are not severable in instances in which the plaintiff dies, the manufacturer and the negligent driver are joint tortfeasors. 786 F.Supp. at 448–449. This language in *Harries* was intended to distinguish the case from *Craigie v. GMC,* 740 F.Supp. 353 (E.D.Pa.1990). Since the plaintiff in *Harries* did not die in the accident, the issue was not before the court, and the language to which MMA refers was *obiter dicta.*

 Moreover, the issue now being before the court, we disagree with our distinction of *Craigie.* In *Harries,* we quoted extensively from *Robbins v. Yamaha Motor Corp., U.S.A.,* 98 F.R.D. 36, 38–39 (M.D.Pa. 1983). Judge Nealon therein stated that the crashworthiness doctrine permits a plaintiff to recover for "enhanced" injuries, i.e. "only for those injuries he can prove he would not have sustained if he had been riding a 'crashworthy' [vehicle]. Of course, if 'enhanced injuries' cannot be shown, then no liability exists as to the manufacturer." *Harries* at 448 (quoting *Robbins* at 39). That statement continues to be an accurate recital of the law, as reflected by its consistency with *Barker.* However, we went on to say that, when the injury is death, it is not divisible, and so distinguished *Craigie.* However, if a plaintiff would have died regardless of the purported defect, the injury is not "enhanced," it is the same.

For example, a passenger in an automobile accident suffers a broken leg, and the evidence shows that there was a defect in the automobile. Expert testimony shows that, if the defect was not present, the plaintiff would have suffered a broken leg. There has

---

**1.** "Punitive damages" also is not a valid cause of action under Pennsylvania law. Rather, it is an element of damages for the torts specified. Count V will be discussed below.

**2.** The complaint recites a claim for "emotional distress" without specifying intentional infliction

of emotional distress or negligent infliction of emotional distress. We read the claim as negligent infliction of emotional distress because the elements of such a cause of action are consistent with the facts recited.

been no enhancement, and the manufacturer is not liable. In the case of an accident in which death would occur with or without a defective vehicle, there can *be* no enhancement: no matter what the defect is, the injury is the same.

■ Another way to view the matter is to look at the potential liability of the parties. Thompson, if found negligent, would be liable to plaintiffs for causing injuries in the accident. His liability, however, would be for those injuries *he* caused, presuming a reasonably safe car.[3] Based on the nature of the claim and its elements, defendants are liable only for any further injuries, so that plaintiff could never recover from defendants for the injuries attributable solely to Thompson's negligence.

■ Thus, regardless of the type of injury at issue, when claims against separate defendants are premised on negligence and crashworthiness, the causes of action are separate because the injuries are mutually exclusive, and the manufacturer and the negligent driver can never be joint tortfeasors.

■ MMA also contends that plaintiffs have not limited their claims to a theory of a lack of crashworthiness. The strict products liability claim (Count I) is premised entirely on allegedly defective restraint systems and safety components. *See* Complaint at 5–6 ¶ 25. The negligence claim (Count II) alleges that defendants failed to use reasonable care in providing a vehicle which would protect passengers in the event of an impact and in failing to warn of the alleged lack of a safe design. Complaint at 6–8 ¶¶ 27–38. The misrepresentation claim (Count III) is based on the reliance of buyers on defendants' representations that particular features of the car made it safe. Complaint at 8–9 ¶¶ 41–47. The breach of warranty claim (Count IV) alleges that defendants represented that the car was in a reasonably safe condition, which it allegedly was not. Complaint at 10 ¶¶ 50–54. The wrongful death (Count VII) and survival (Count VIII) claims are based on

injuries allegedly resulting from the same defect, i.e. the lack of adequate safety features. Complaint at 12–13 ¶¶ 64–68, 70–71. Recovery on the loss of consortium claim (Count IX) is contingent on recovery as recited above, and therefore also is limited to the enhanced injuries.

As to each of these claims, whether considered strictly under the crashworthiness doctrine or under general principles of tort law, the claim is for injuries specifically alleged to have been caused by the lack of adequate safety features in the car. The only injuries for which plaintiffs may recover in such a situation are the enhanced injuries, since the alleged defect cannot be said to have been a substantial factor in bringing about injuries which would have occurred absent the defect.

■ The remaining claim, however, is for negligent infliction of emotional distress. That claim varies because the alleged injury, severe emotional distress, cannot be attributed solely to the conduct of defendants. That is, the cause of action covers the conduct of both defendants, Thompson in causing the accident and defendants in enhancing the injuries suffered:

> Pennsylvania has adopted the Uniform Contribution Among Joint Tortfeasors Act wherein joint tortfeasors are defined as "two or more persons jointly or severally liable in tort for the same injury to persons or property ..." 42 Pa. Cons.Stat. Ann. § 8322 (1982). In determining whether parties are separate or joint tortfeasors, the courts of Pennsylvania have considered several factors:

>> the identity of a cause of action against each of two or more defendants; the existence of a common, or like duty; whether the same evidence will support an action against each; the single indivisible nature of the injury to the plaintiffs; identity of the facts as to time, place or result; whether the injury is direct and immediate rather than conse-

---

**3.** Even if Thompson were found liable for the entire amount, he could recover for the excess (an amount attributable to the enhanced injuries) from defendants. Thus, defendants could be liable to Thompson. However, the inverse is not true: since a manufacturer can only be liable for the excess, and not for the entirety of the plaintiffs' injuries, Thompson cannot be liable to it for contribution.

quential; responsibility of the defendants for the same *injuria* as distinguished from the *damnum*.

*Harries* at 447–448 (quoting *Robbins* at 38; further citation omitted in *Harries*).

In the instance of the negligent infliction of emotional distress claim, there is a single cause of action based on one event (witnessing of the accident) with a single, indivisible injury. There is a common duty (not to cause injury to a closely related person in the presence of the plaintiff), and a direct injury caused by the breach of that duty. In short, the recited factors all favor finding defendants and Thompson to be joint tortfeasors as to the negligent infliction of emotional distress claim.[4]

### IV. CONCLUSION

Based on the foregoing, we conclude that the motion to strike should be granted in part and denied in part. The motion will be granted as to Counts I, II, III, IV, VII, and VIII of the complaint, as incorporated into the third-party complaint. The motion will be denied as to Count VI.

### V. ADDITIONAL MATTERS

The complaint sets forth a claim for punitive damages. Punitive damages are an element of damages which may be recovered for individual torts, but are not an independent claim. Count V of the complaint will be stricken from the complaint, but the complaint will be read so as to provide for claims for punitive damages as to each of the remaining claims.

During the initial case management conference, we indicated to the parties that the undersigned judge owns and drives a Mazda vehicle. We do not believe that ownership of a Mazda creates an actual or potential conflict of interest, but provided the information to the parties should they wish to pursue the issue. No motion having been filed, the

court considers the issue to have been waived.

---

4. We also would add that, in this instance, defendants could be liable for the entirety of the injury, with Thompson then liable for his part in causing the injury.