

1995 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

7-24-1995

# Barker v Deere & Company

Precedential or Non-Precedential:

Docket 94-3524

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_1995

## Recommended Citation

"Barker v Deere & Company" (1995). *1995 Decisions.* Paper 191.
http://digitalcommons.law.villanova.edu/thirdcircuit_1995/191

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova University School of Law Digital Repository. It has been accepted for inclusion in 1995 Decisions by an authorized administrator of Villanova University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT


No. 94-3524


DAVID C. BARKER and CHRISTINA L. BARKER,
Husband/Wife,

v.

DEERE AND COMPANY,

Appellant


On Appeal from the United States District Court
for the Western District of Pennsylvania
(D.C. No. 91-cv-01383)


Argued May 18, 1995

Before: COWEN, LEWIS and SAROKIN, Circuit Judges

(Filed  July 24, 1995 )

Gary F. Sharlock
Robert D. Leidigh
David P. Helwig (argued)
Sharlock, Repcheck & Mahler
600 Grant Street
3280 USX Tower
Pittsburgh, PA 15219

        COUNSEL FOR APPELLANT
        Deere and Company

Dallas W. Hartman (argued)
Dallas W. Hartman, P.C.
2815 Wilmington Road
New Castle, PA 16105

        COUNSEL FOR APPELLEES
        David C. Barker
        Christina L. Barker

1

OPINION

COWEN, Circuit Judge.

In this appeal of a personal injury action arising out of injuries caused by an allegedly defective tractor, we are asked to decide whether the district court erred: (1) in allowing plaintiffs to introduce evidence concerning a history of tractor rollovers when the accident at issue did not involve a tractor rollover, and (2) in denying defendant's motion for judgment as a matter of law and allowing plaintiff's strict liability case to reach the jury. We conclude that the district court did not err in denying the defendant's motion for judgment as a matter of law and in allowing this case to proceed to the jury. However, because the district court did err in admitting irrelevant evidence and because that evidentiary error was not harmless, we will vacate the judgment of the district court and remand to the district court for retrial.

I. FACTUAL AND PROCEDURAL HISTORY

On September 21, 1989, plaintiff David Barker ("Barker")[0] was operating his John Deere Model 620 ("Deere 620") tractor while working on his farm in Slippery Rock, Pennsylvania.

---

[0]Christina Barker, David's wife, was also a party in the suit, claiming damages for past and future loss of services, companionship, and consortium. For purposes of this appeal, both David and Christina Barker will be referred to collectively as "Barker," unless it is necessary to distinguish between the two.

He was using the tractor to tow several large logs from a lower field to his farmhouse to be split and chopped for firewood. He hauled the logs by backing the tractor up to the log, securing the log to the tractor using a 15 foot chain which was attached to the tractor's drawbar, and then putting the tractor in forward gear to drag the log. Barker completed several successful trips, and then backed the tractor to a log that was 16 to 18 inches in diameter and 20 feet long. After his stepfather hooked the log, Barker turned forward, and began to tow the log. At this point, the front end of the log became stuck in the ground, causing the rear end of the log to rise in the air and flip over in a pole-vault type fashion, striking Barker from behind on his left shoulder. Barker was ejected from his seat and thrown to the ground where he was then run over by the tractor. As a result of the accident, he suffered serious injuries including broken ribs, punctured lungs, a broken leg, and injuries to his back and shoulder.

Barker filed a complaint on August 19, 1991, and thereafter an amended complaint in the United States District Court for the Western District of Pennsylvania against Deere and Company ("Deere"). He alleged inter alia, that the Deere 620 tractor[0] was defective because at the time of manufacture it lacked an operator protective system ("OPS") to protect him from

---

[0] During the mid-to-late 1950's, Deere designed and produced the John Deere 600 line of tractors, including the Deere 620 tractor. This model was produced from 1956 until 1958 and was designed primarily for agricultural use. The Deere 620 did not come equipped with a structure to protect the operator from tractor rollovers, or from falling objects.

3

objects which intruded into the operator area, and because Deere later failed to retrofit the tractor with such a system.[0] App. at 43-44. The case was tried before a jury. At the close of Barker's case and again at the close of all the evidence, Deere moved pursuant to Rule 50 of the Federal Rules of Civil Procedure for judgment as a matter of law, relying on Azzarello v. Black Bros. Co., 480 Pa. 547, 391 A.2d 1020 (1978), and Fitzpatrick v. Madonna, 424 Pa. Super. 473, 623 A.2d 322 (1993). These cases explain that the trial judge is initially responsible for determining whether a strict products liability case should be submitted to the jury. The district court denied Deere's motion on both occasions.

The jury concluded that the Deere 620 tractor was defective and that the defect was a substantial factor in causing Barker's injuries. It returned an award of damages in the amount of $317,753.00 to David Barker but awarded no damages to Christina Barker for loss of consortium. After the verdict was entered, Deere filed a motion for a new trial pursuant to Rule 59

---

[0]In a typical products liability action in Pennsylvania, a plaintiff must show: (1) the product was defective; (2) the defect existed while the product was in the control of the manufacturer; and (3) the defect was the proximate cause of the injuries. Habecker v. Clark Equipment Co., 36 F.3d 278, 284 (3d Cir. 1994), cert. denied, __ U.S. __, 115 S. Ct. 1313 (1995), (citing Walton v. Avco Corp., 530 Pa. 568, 576-77, 610 A.2d 454, 458-59 (1992)). However, to establish a cause of action based on a theory of crashworthiness, the claim asserted here, a plaintiff must show: (1) the design of the product was defective; (2) when the design was made, an alternative, safer design, practicable under the circumstances existed; (3) what injuries, if any, the plaintiff would have received had the alternative, safer design, been used; and (4) what injuries were attributable to the defective design. Habecker, 36 F.3d at 284.

4

of the Federal Rules of Civil Procedure and renewed its motion for judgment as a matter of law. The district court denied both motions. Deere appeals that order, arguing that the district court made several errors in ruling on the admissibility of evidence, and further arguing that this strict products liability case should not have been submitted to the jury.

## II. JURISDICTION

The district court had jurisdiction to entertain this matter pursuant to 28 U.S.C. § 1332 (diversity jurisdiction). We have jurisdiction pursuant to 28 U.S.C. § 1291, which confers jurisdiction upon all final orders of the district courts.

## III. STANDARD OF REVIEW

We ordinarily review a trial court's decision concerning the admissibility of evidence under an abuse of discretion standard. Glass v. Philadelphia Electric Co., 34 F.3d 188, 191 (3d Cir. 1994) (citing In re Japanese Electronic Products, 723 F.2d 238, 260 (3d Cir. 1983), rev'd on other grounds, Matsushita Electronic Industrial Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 106 S. Ct. 1348 (1986)). Likewise, "we review the district court's decision to include or exclude evidence arising under the Federal Rules of Evidence 401, 402 and 403 for an abuse of discretion." Id. (citing Pfeiffer v. Marion Center Area Sch. Dist., 917 F.2d 779, 781–82 (3d Cir. 1990)). However, when this court reviews a ruling on the admissibility of evidence which turns on an interpretation of a Federal Rule of

Evidence, our review is plenary.  In Re Paoli R.R. Yard PCB Litigation, 35 F.3d 717, 749 (3d Cir. 1994) (citing DeLuca v. Merrell Dow Pharmaceuticals, Inc., 911 F.2d 941, 944 (3d Cir. 1990)).

The question of whether a strict products liability case in Pennsylvania should be submitted to the jury is a question of law.  Fitzpatrick, 424 Pa. Super. at 475, 623 A.2d at 324 (citing Azzarello, 480 Pa. at 558, 391 A.2d at 1026); see also Nowak v. Faberge USA, Inc., 32 F.3d 755, 757 (3d Cir. 1994) (noting that the Supreme Court of Pennsylvania has explicitly held the determination that a product is defective is initially a question of law to be answered by the trial judge).

## IV. DISCUSSION

A.  Legal Relevance of Previous Tractor Rollovers

Deere contends that it was severely prejudiced at trial when Barker was permitted repeatedly to place into evidence facts and statements concerning the history of other farm accidents and, in particular, tractor rollovers.  Barker claims that this evidence was offered to prove that: (1) the Deere 620 tractor was defective on the theory that it did not possess an OPS to protect the operator from the consequences of rollovers, Appellee's brief at 12; and (2) the OPS was an alternative, safer design, practicable (or feasible) under the circumstances,[0] id. -- two

---

[0] Barker offers a third justification for admission of tractor rollover evidence, namely it was relevant to prove that the placement of the OPS on the Deere 620 presented no mechanical incompatibility.  As noted in Habecker, 36 F.3d at 286,

elements which must be proven in order to succeed under a theory of crashworthiness. See supra n.3. Deere maintains that evidence concerning tractor rollovers, and injuries and deaths caused by those rollovers, was not relevant to any issue in this case which did not involve a tractor rollover.

Specifically, Deere objected to the testimony of John Sevart ("Sevart"), Barker's expert witness, who testified to the following: (1) in 1950, and increasing at a rate of 40 to 50 a year for the remainder of the decade, there were approximately 640 tractor deaths to farmers; App. at 265; (2) approximately 60% of the fatalities were caused by rollover accidents; App. at 266; (3) approximately 30% of the fatalities occurred as a result of the operator being ejected out of the seat and run over or being struck by a falling object; App. at 266; and (4) for every operator killed during this time span, an additional 40 people were injured; App. at 267.

> Rule 401 of the Federal Rules of Evidence states: "Relevant evidence" means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.

Fed. R. Evid. 401. Rule 402 of the Federal Rules of Evidence states in relevant part, "[e]vidence which is not relevant is not admissible." Fed. R. Evid. 402. We now turn to analysis of whether evidence of rollover accidents is relevant to prove: (1)

---

"mechanical incompatibility" is an element which points to a lack of feasibility, and this is incorporated in Barker's second asserted justification for admission of evidence of rollover accidents.

7

a design defect; and (2) that an alternative, safer, feasible design existed.

In assessing whether evidence proffered as direct proof of a design defect is relevant in a products liability (crashworthy) case, we observe:

> In the appropriate circumstances, evidence of prior occurrences and accidents involving a product which is identical or substantially similar to the product which has allegedly caused an injury has generally been held to be admissible at trial. [S]uch evidence may be considered by the trial court for admission in . . . strict liability . . . actions. <u>The almost universal requirement, however, is that the prior occurrence must involve facts and circumstances which are substantially similar to those involved in the case under consideration or they will be excluded.</u>

2A Louis Frumer & Melvin Friedman, <u>Products Liability</u> § 18.02[1], at 18-14 to 18-17 (1995) (footnotes omitted) (emphasis added).

We note that every court of appeals to have considered this issue agrees that when a plaintiff attempts to introduce evidence of other accidents as direct proof of a design defect, the evidence is admissible only if the proponent demonstrates that the accidents occurred under circumstances substantially similar to those at issue in the case at bar. <u>See</u> <u>Burke v. Deere & Co.</u>, 6 F.3d 497, 506 (8th Cir. 1993), <u>cert.</u> <u>denied</u>, __ U.S. __, 114 S. Ct. 1063 (1994); <u>Lockley v. Deere & Co.</u>, 933 F.2d 1378, 1386 (8th Cir. 1991); <u>Joy v. Bell Helicopter Textron, Inc.</u>, 999 F.2d 549, 554 (D.C. Cir. 1993); <u>Ross v. Black & Decker, Inc.</u>, 977 F.2d 1178, 1185 (7th Cir. 1992), <u>cert.</u> <u>denied</u>, __ U.S. __, 113 S. Ct. 1274 (1993); <u>Cooper v. Firestone Tire and Rubber Co.</u>, 945

8

F.2d 1103, 1105 (9th Cir. 1991); Anderson v. Whittaker Corp., 894 F.2d 804, 813 (6th Cir. 1990); Hessen v. Jaguar Cars, Inc., 915 F.2d 641, 649 (11th Cir. 1990); Melton v. Deere & Co., 887 F.2d 1241, 1245 (5th Cir. 1989); Wheeler v. John Deere Co., 862 F.2d 1404, 1408 (10th Cir. 1988); McKinnon v. Skil Corp., 638 F.2d 270, 277 (1st Cir. 1981); cf. Estate of Carey v. Hy-Temp Mfg., Inc., 929 F.2d 1229, 1235 n.2 (7th Cir. 1991) ("[W]e caution that `substantially similar' does not mean `identical.'").

This foundational requirement of establishing substantial similarity is especially important in cases where the evidence is proffered to show the existence of a design defect. See Nachtsheim v. Beech Aircraft Corp., 847 F.2d 1261, 1268-69 (7th Cir. 1988). In such cases, the jury is invited to infer from the presence of other accidents that a design defect existed which contributed to the plaintiffs' injuries. See id. at 1269; see also C.A. Associates v. Dow Chemical Co., 918 F.2d 1485, 1489 (10th Cir. 1990) (noting that in "a product liability action, the occurrence of similar accidents or failures involving the same product holds great relevance, since evidence of such failures tends to make the existence of a defect more probable than it would be without the evidence").

We observe that the district court must be apprised of the specific facts of previous accidents in order to make a reasoned determination as to whether the prior accidents are "substantially similar." Absent such a foundation, it is impossible for the district court in the first instance, and for this court on appeal, to review the facts in order to make a

determination as to similarity.  See Hardy v. Chemetron Corp., 870 F.2d 1007, 1009 (5th Cir. 1989) (upholding the trial court's refusal to admit evidence because there was a "total lack of evidence on the crucial question of substantial similarity"); Nachtsheim, 847 F.2d at 1269 (7th Cir. 1988) ("[T]here are too few established facts about the [prior] accident from which a comparison between the two accidents can be made.") (emphasis in original); Lewy v. Remington Arms Co., 836 F.2d 1104, 1109 (8th Cir. 1988) (plaintiff's counsel "failed to lay an adequate foundation" to show that other evidence was similar); McKinnon, 638 F.2d at 277 (1st Cir. 1981) ("The record is totally devoid of [a] showing of the circumstances under which these accidents occurred.") (footnote omitted).

Our primary concern is that Barker has not presented sufficient evidence which could lead the district court to believe that the prior accidents were in any way similar to the case before us.  The record contained only raw numbers and statistical extrapolations.  At most, we are able to discern from the testimony of Barker's expert witness that approximately 190 persons (30% of 640 fatalities) were killed in tractor accidents as a result of being: (1) ejected from the seat; (2) run over; and/or (3) hit by a falling object.[0]  However, there are no documented cases of an injury/death arising from an accident with a Deere 620 tractor where an object entered the operator area and

---

[0]We question how the other 384 (60% of 640) fatalities that resulted from tractor rollover accidents are similar, let alone "substantially similar" to the case before us which did not involve a tractor rollover.

10

ejected the operator from his seat.  We hold Barker failed to offer sufficient evidence to prove that any prior accident is "substantially similar" to the accident which led to his injuries.[0]

Moreover, what scant evidence was admitted did not contain any specific information with regard to the details of any single accident.  All evidence of accidents where an object entered the operator area was presented via the National Safety Council statistics.  This evidence concerned tractors generally, not specifically John Deere tractors and not Deere 620 tractors.  Furthermore, most of the evidence of fatalities was characteristic of rollovers, and we are uncertain of the specifics of any non-rollover accidents.  Barker was attempting to prove a defect in the Deere 620 tractor by submitting evidence of injuries/deaths and evidence of a possible defect in other tractors that were involved in rollover accidents.  The jury was invited to infer that over 500 lives per year would be saved if there were a rollover bar on the Deere 620 tractor.  We fail to comprehend how any of the prior accidents were "substantially similar" to the case before us.  All of the evidence of prior tractor accidents that was introduced as direct evidence of a

---

[0]Assuming _arguendo_ that Barker was successful in proving that some of the prior accidents were "substantially similar" to his accident, we question how the introduction of death statistics was relevant.  As part of his case-in-chief, Barker was attempting to show the _feasibility_ of design of the operator protective structure, not the _need_ for such a device.  The existence of accidents and fatalities that occurred goes to prove the _need_ for the protective structure, not its _feasibility_.

design defect should have been excluded as irrelevant pursuant to Rule 402.

Next, we address whether evidence of rollover accidents is relevant to prove that an alternative, safer, feasible design existed at the time of manufacture of the Deere 620 which would have prevented or mitigated some of Barker's injuries. In order to prove this element of his claim, Barker must show that an OPS design existed which would provide protection against the recognized hazards that a tractor engages and also pose no additional risk to the operator. Habecker, 36 F.3d at 284–86. The evidence presented at trial by Barker revealed that there were three recognized hazards known prior to the manufacture of the Deere 620: (1) injury from falling objects; (2) injury from ejection from the operator seat; and (3) injury from tractor rollovers. Barker was thus obligated to prove that the OPS, which he claims would have prevented the log from hitting and ejecting him, would also have protected the operator in the event of a rollover, the most common type of tractor accident. Stated differently, if Barker failed to prove that the proposed OPS did not protect against rollovers, as well as against intrusions into the operator area, then the proposed OPS would not be a safer design. Evidence of tractor rollover accidents would also enable the jury to understand the necessity for the precise design of the OPS. Thus, evidence regarding the existence of tractor

12

rollover accidents is relevant to proving one element of a crashworthy case.[0]

Our observation that Barker must prove that the OPS provides protection in the event of rollover accidents in order to satisfy that element of his claim does not necessarily mean that all of the evidence of rollover accidents introduced at trial was relevant. Evidence of specific rollover accidents is not relevant unless it is sufficiently related to the Deere 620. That is, the evidence must be probative of the type of accidents that would have influenced the designers of the Deere 620, had they been designing an OPS for the Deere 620. Instead, the evidence at trial dealt with <u>all</u> accidents on <u>all</u> tractors during the period leading up to the development of the Deere 620. Absent a sufficient foundation for the premise that tractor designers must examine accidents that affect other analogous products of other manufacturers, evidence of <u>all</u> accidents on <u>all</u> tractors during the development of the Deere 620 would not be sufficiently probative of whether an OPS for the Deere 620 would have had to protect against rollovers, as well as intrusions. Because both the volume of evidence regarding rollovers and the specific introduction of estimated fatalities and injuries resulting from

---

[0]At a bare minimum, plaintiff must be allowed to introduce general evidence which indicates there are three common types of tractor accidents and that most accidents involving tractors were of the rollover type. We do not foreclose or limit the plaintiff's proofs in demonstrating that the alternative, feasible, safer design must encompass protection against intrusions, as well as ejections and rollovers. Some allusion to rollover accidents is necessary in plaintiff's attempt to prove that an alternative, feasible, safer design existed when the product was manufactured.

13

rollover accidents involving other tractors was not relevant to
Barker's case, this evidence should have been excluded.[0]

### B. Harmless Error Analysis

After concluding that the district court erred in
allowing Barker to introduce evidence of unrelated tractor
accidents, we must next inquire whether "it is highly probable
that the error did not affect the outcome of the case." Lockhart
v. Westinghouse Credit Corp., 879 F.2d 43, 53 (3d Cir. 1989); see
McQueeney v. Wilmington Trust Co., 779 F.2d 916, 924, 927-28 (3d
Cir. 1985). We have explained that a non-constitutional error in
a civil case is harmless "unless a substantial right of the party
is affected." Linkstrom v. Golden T. Farms, 883 F.2d 269, 269
(3d Cir. 1989) (quoting Fed. R. Evid. 103(a)). We believe that
the error did affect the jury's verdict, and thus we are unable
to conclude that it is highly probable that the error did not
affect the outcome of the case.

First, we note that the only question submitted to the
court by the jury during its deliberations revolved around the
very evidence that we earlier concluded should not have been
admitted.[0] The fact that the jury requested the accident

---

[0]Alternatively, Deere argues that even assuming arguendo that the
evidence was relevant, the district court should have excluded
the evidence pursuant to Rule 403 of the Federal Rules of
Evidence because of the "danger of unfair prejudice." Fed. R.
Evid. 403. Because we conclude that the evidence was not
relevant and thus should not have been admitted pursuant to Rule
402, we need not decide whether Rule 403 would warrant the
exclusion of this evidence.

[0]The jury sent the following question to the judge, "Are we going
to have any of the other research available to us, e.g., accident

14

statistics indicates that it was concentrating on this evidence and demonstrates that the court's error in allowing this evidence was not harmless.  Second, our conclusion is further supported by the fact that Barker's opening statement and closing argument contained references to tractor rollovers and other accidents which were not similar to the incident in which Barker was injured.  To the extent that Sevart's testimony regarding prior accidents should not have been admitted, it was improper for Barker's counsel to comment on that evidence.[0]  Finally, we are also troubled by additional inflammatory comments made by Barker

statistics, studies on early ROPS [Rollover Protective Systems], etc."  App. at 806.

[0]Barker commented on Mr. Sevart's testimony as follows:

> The evidence will show you that operator protection systems, such as that [] we're going to show you, would save in excess of 500 lives a year.  That's 500 lives a year for as long back as [Deere] would have put them on.

App. at 183.

> Mr. Sevart testified that in 1950, according to the National Safety Council, which their expert has deemed to be an authoritative source on statistics, 640 people were killed on tractors.  Of those 640 people, 90 percent were killed either by being ejected off the tractor, being struck by a falling object, or being hit, hurt in a tractor rollover.
> Now, of that, 576 individuals, Mr. Sevart said one-third of that, 576 -- those 576 people were, 190 people were killed as a result of ejectment out of the seat, being run over or falling objects.  [5]76 people per year in 1950, with the rate going up at a rate of, I believe he said 40 or 45 additional persons per year.  In addition to those statistics from the National Safety Council, for every one reported fatality, there are 40 injuries.

App. at 733.

15

during opening statements and closing arguments regarding Deere's alleged inaction in the face of documented injuries/deaths.[0]  We conclude that the district court erred in admitting irrelevant evidence of previous tractor rollover accidents, and that the error was not harmless.

C. Motion for Judgment as a Matter of Law

Deere maintains that under the teaching of Azzarello, 480 Pa. at 558, 391 A.2d at 1026, as followed by later cases

---

[0]Barker commented as follows:

> The evidence will show that in 1956, the first year that this tractor was manufactured, a Model 620 agricultural tractor, Deere had known for 30 years that hundreds of farmers were being killed, maimed and crippled throughout the United States and the rest of the industrialized world due to farm accidents.

App. at 179 (emphasis added).

> These things are killing people needlessly. People were being crushed, paralyzed and killed across the country needlessly.  What did [Deere] do in 1950?  Hear no evil, see no evil.  That's what [Deere] did. [Deere] did nothing.  The evidence is conclusive that in spite of this problem in 1950, Deere did nothing.

App. at 735 (emphasis added).

> [Y]ou're allowing [Deere] to get away with murdering and injuring people . . . .

App. at 756 (emphasis added).  Although opening statements and closing arguments are not "evidence," we are mindful of the effect that the following statements may have had on the jury. We pause here to comment that, aside from the fact that these comments were founded on irrelevant and inadmissible evidence, these remarks were inappropriate and inflammatory.  Even though the objection to "get away with murder[]" was sustained, the statistical evidence on which the accusation was premised was nonetheless admitted during the trial.

16

including Fitzpatrick, 424 Pa. Super. at 475, 623 A.2d at 324, this strict products liability case should not have been submitted to the jury. Deere argues that the district court should have entered judgment as a matter of law in its favor, since there was no evidence that a suitable protective structure of the type advocated by plaintiffs existed at the time the subject tractor was designed, manufactured, and under Deere's control. Deere concedes that evidence of the non-existence of a safety device may not be properly considered by a jury, but maintains that this evidence bears directly on the trial judge's threshold determination of whether the case should even be submitted to the jury. Finally, Deere contends that to hold it liable for failure to put an OPS on the Deere 620 at least ten years before a practical OPS became available, in effect imposes a duty to invent on manufacturers.

In Azzarello, the Supreme Court of Pennsylvania held that in a strict product liability action, before the case can be placed before the jury, the trial judge must make a threshold legal determination whether the defect alleged, if proven, would render the product "unreasonably dangerous" as the term is defined in the Restatement (Second) of Torts § 402A. Azzarello, 480 Pa. at 558, 391 A.2d at 1026. The court further stated, "[i]t is a judicial function to decide whether, under plaintiff's averment of the facts, recovery would be justified; and only after this judicial determination is made is the cause submitted to the jury to determine whether the facts of the case support the averments of the complaint." Id. at 558, 391 A.2d at 1026.

17

Recently, another Pennsylvania court in applying Azzarello added the following:

> [T]he initial issue . . . is a question of law whose resolution depends upon social policy . . . . [I]n making a product liability social policy analysis, a court must possess the qualities of both a social philosopher and a risk-utility economic analyst. The court in such cases must balance the utility of the product against the seriousness and likelihood of injury and the availability of precautions that, though not foolproof, might prevent the injury.

Fitzpatrick, 424 Pa. Super. at 475-76, 623 A.2d at 324 (citations and internal quotation marks omitted). Furthermore, the court in Fitzpatrick observed that factors to be considered when undertaking this analysis include: "[1] the gravity of the danger posed by the challenged design; [2] the likelihood that such danger would occur; [3] the mechanical feasibility of a safer design; [4] the financial cost of a safer design; and [5] the adverse consequences to the product that would result from a safer design." Id. at 476, 623 A.2d at 324 (quoting Dambacher by Dambacher v. Mallis, 336 Pa. Super. 22, 50 n.5, 485 A.2d 408, 423 n.5 (Pa. Super. 1984) (citing Barker v. Lull Engineering Co., 20 Cal.3d 413, 431, 143 Cal. Rptr. 225, 237, 573 P.2d 443, 455 (1978))).

Sevart testified that OPS's were first developed for the logging industry prior to 1940 in order to provide protection from falling objects. He further explained that prior to 1956, steel and welding techniques existed which could be used to produce an OPS. Additionally, Sevart testified that such an OPS would not interfere with the utilization of the Deere 620 tractor

18

and would accommodate 99 percent of all farm implements that could be used with the Deere 620. Finally, he stated that the cost of manufacturing and installing an OPS in 1955 would have been approximately $150.00 per tractor.

Deere's expert testified that an OPS was not available until the 1960's and, even then, incompatibility with existing tractors was a major problem. Deere maintains that there was ample testimony presented at trial which indicated that the placement of an OPS was not feasible because it would interfere with tractor controls and farming implements. Additionally, Deere claims that the likelihood of another accident similar to this one is "infinitesimal" as manifest by Barker's failure to present evidence of any similar accident.

When deciding whether to submit the "issue of defect to a jury, the court must first view the evidence in the light most favorable to the plaintiff to determine if a defect may be found." Burch v. Sear, Roebuck and Co., 320 Pa. Super. 444, 450-451, 467 A.2d 615, 618-19 (Pa. Super. 1983) (citing Azzarello). Examining the factors as listed in Fitzpatrick, we observe that Barker proffered to the district court that: (1) a tractor without an OPS posed a danger to the operator; (2) it was not uncommon for such a danger to occur; (3) the OPS was feasible; (4) the cost was reasonable; and (5) the OPS would not be incompatible with the tractor controls or its implements. After reviewing the evidence in the instant case, we are satisfied the district court did not err in submitting this case to the jury.

19

In so holding, we reject Deere's argument that a district court, during its threshold determination, may consider the nonexistence of a safety device as evidence of its nonfeasibility. Recently, in Habecker v. Clark Equipment Co., 36 F.3d 278 (3d Cir. 1994), cert. denied, __ U.S. __, 115 S. Ct. 1313 (1995), a strict product liability (crashworthiness) case involving a forklift, this Court was asked to decide a similar issue. In that case, the defense expert testified that at the time of the manufacture of the forklift in 1977, there was no acceptable operator restraint system ("ORS") that could have been put on the forklift because the ORS was not developed until 1983 and patented until 1986. Id. at 284-85. We held that an attempt to show that an ORS developed in 1983 was not in existence in 1977, and therefore not feasible, was "unequivocally impermissible in a Pennsylvania products liability trial." Id. at 285. We stated three more times in Habecker that evidence of the non-existence of a safety feature could not be introduced to suggest that the device was not feasible at the earlier date. See id. at 286 ("The fact that the 1983 ORS did not exist in 1977 . . . does not mean that it was incapable of being placed on the [forklift] in 1977 if it did in fact exist."); id. (like feasibility, the "practicable under the circumstances" element bars the admission of evidence the defendant would like to present regarding the nonexistence of the 1983 ORS); id. at 287 (in suggesting the device was not feasible, "the defendants may not counter with evidence that the 1983 ORS was not in existence at the time of manufacture"). In light of such explicit and

20

repetitive language as well as the public policy considerations of Pennsylvania,[0] we perceive no reason to limit <u>Habecker</u> and allow the trial court to consider the nonexistence of a safety device.

Furthermore, we reject Deere's contention that holding a manufacturer liable for failing to place a safety device on a product when the safety device did not exist at the time of manufacture of the product would impose a "duty to invent" on manufacturers. In <u>Habecker</u>, we stated:

> Pennsylvania's public policy is to encourage manufacturers to make their products as safe as possible, as soon as possible. It is the jury's prerogative to hold a manufacturer responsible for not more aggressively researching and implementing safety devices.

<u>Id.</u> at 286. This statement reflects Pennsylvania's concerted effort to ensure that products that reach its market are as safe as possible, and we believe that allowing a manufacturer to challenge feasibility of a device by arguing non-existence of the device will hinder this goal. We do not interpret Pennsylvania's policy to create a duty for manufacturers to invent or else risk being held liable.


V. CONCLUSION

We conclude that the district court committed no error of law in allowing the case to proceed to the jury, but erred in allowing the admission of irrelevant evidence. Because we determine that the evidentiary error was not harmless, we will

---

[0]<u>See</u> discussion below.

21

vacate the judgment of the district court and remand with directions for a new trial consistent with this opinion.

On remand, the district court must conduct a new trial based on the principles as we have described here today and in Habecker. Additionally, unless the district court is provided with specific, additional evidence which allows it to make a finding that the previous accidents are "substantially similar" to the case at bar, all evidence, statistical and otherwise, pertaining to prior tractor accidents shall be inadmissible as not relevant. Assuming that Barker lays an adequate foundation for the introduction of evidence of rollover accidents, we offer the following guidance to the district court to limit the amount and detail of this evidence: (1) no evidence regarding the number of deaths and injuries due to any of these types of accidents shall be admitted; and (2) Barker should not be permitted to argue that Deere would have saved an estimated number of lives and prevented an estimated number of injuries had it developed an OPS for the Deere 620 back in 1956.

However, even if the district court is able to conclude that any of the accidents are relevant, the court should proceed to analyze the evidence under Rule 403 of the Federal Rules of Evidence to eliminate the danger of unfair prejudice. Costs taxed against appellees.

22