NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 17-3182

_____

ELIZABETH C. SNIDER, Individually and as Executrix
of the estate of Daniel A. Snider;
L. W. S., a minor, by his mother, Elizabeth C. Snider

v.

STERLING AIRWAYS, INC.; CONTINENTAL MOTORS, INC.;
TDY INDUSTRIES, LLC; TELEDYNE TECHNOLOGIES INCORPORATED;
TECHNIFY MOTOR (USA), INC.

CONTINENTAL MOTORS, INC; TDY INDUSTRIES, LLC;
TELEDYNE TECHNOLOGIES INCORPORATED;
TECHNIFY MOTOR (USA), INC.,

Third Party Plaintiffs
v.

UNITED STATES OF AMERICA,
Third Party Defendant

Continental Motors, Inc.,
                                        Appellant

_____

Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. No. 2-13-cv-02949)
District Judge: Honorable J. Curtis Joyner

_____

Submitted Under Third Circuit LAR 34.1(a)
July 12, 2018

Before: MCKEE, VANASKIE, and RESTREPO, Circuit Judges

_____

OPINION[*]

_____

McKEE, <u>Circuit Judge</u>

Continental Motors, Inc. appeals the judgment entered in favor of Elizabeth Snider following a jury trial. Mrs. Snider sued Continental after her husband was tragically killed in a plane crash. She argued that Continental's negligence in the manufacturing of a component of the plane's engine caused the crash. The jury agreed. Continental now raises four claims of error. We will affirm for essentially the reasons stated in the district court's thorough, well-reasoned opinions.[1]

**I.**

Mrs. Snider's lawsuit alleged that the plane crash that killed her husband was caused by a defective cylinder assembly in the airplane's engine. Sterling Airways replaced that cylinder assembly in 2004 after purchasing the assembly from Continental. After years of discovery, the case was tried to a jury. Mrs. Snider's evidence showed that a defective exhaust valve guide in the cylinder assembly failed, which in turn caused the engine to stop thus causing the plane to crash. The jury returned a verdict against

_____

[*] This disposition is not an opinion of the full Court and under I.O.P. 5.7 does not constitute binding precedent.

[1] *See Snider v. Sterling Airways*, No. 13-CV-2949, 2017 WL 2813223 (E.D. Pa. June 29, 2017) ("*Snider I*"); *Snider v. Sterling Airways*, No. 13-CV-2949, 2017 WL 6336596 (E.D. Pa. Sep. 5, 2017) ("*Snider II*").

Continental and in favor of Mrs. Snider.[2] It ultimately assessed more than three million dollars in damages. This appeal followed.

## II.

Continental raises four claims of error. Because we fully adopt the district court's disposition of these issues, we need only briefly address each.

First, Continental claims that the General Aviation Revitalization Act ("GARA") insulated it from liability.[3] GARA bars lawsuits against the manufacturer of an aircraft or any "component, system, subassembly, or other part of the aircraft" if the manufacturer's product failed more than eighteen years after the product was delivered.[4] However, where a "new component, system, subassembly, or other part" replaces an existing part in the aircraft, the eighteen year limitation period restarts on the day the replacement procedure is completed.[5] If eighteen years passes after the date of replacement, the manufacturer of the replacement part is protected from suit.[6]

Continental argues that GARA protects it from liability because it did not manufacture the exhaust valve guide in the replacement cylinder assembly and therefore did not manufacture any part on the airplane that was installed within eighteen years of the crash. We reject this argument. Although, as the district court recognized, "the

---

[2] The jury also found some negligence on Sterling's behalf, but concluded that the negligence was not a factual cause of the accident.
[3] GARA is codified in the Notes of 49 U.S.C. § 40101. *See* 49 U.S.C § 40101, Note; Pub.L.No. 103-298, 108 Stat 1552 (1994). Hereinafter, we will cite the act simply as GARA.
[4] GARA § 2(a).
[5] *Id.* § 2(a)(2).
[6] *Id.*

cylinder assemblies incorporated exhaust valve guides" that were manufactured by a third-party, nevertheless the "exhaust valve guides (which were assigned Continental Part No. 636242) were designed by Continental and manufactured specifically for Continental[.]"[7] Continental then tested the hardness of the exhaust valve guides and individually reamed each guide to specifically fit a particular Continental cylinder assembly.[8] Based on this testimony, there was sufficient evidence for the jury to conclude that Continental "manufactured" the replacement cylinder assembly notwithstanding the precursor parts that Continental obtained from a third-party. Continental's replacement cylinder assembly was installed approximately six years before the accident, so we agree with the district court's conclusion that GARA's eighteen year limitation did not bar suit against Continental.[9]

Second, Continental argues that the evidence did not show that the manufacturing defect caused the accident. As with all products liability claims, Mrs. Snider was required to prove causation "by demonstrating that a specific defendant is responsible for the harm alleged."[10] The district court thoroughly recounted the evidence that showed that Continental's manufacturing defect in the cylinder assembly caused the plane to crash, killing its occupants.[11] We adopt its reasoning in full and similarly conclude that there

---

[7] *Snider I*, 2017 WL 2813223, at *4.
[8] *Id.*
[9] *See id.* at *2–5.
[10] *Robertson v. Allied Signal, Inc.*, 914 F.2d 360, 366 (3d Cir. 1990).
[11] *Snider I*, 2017 WL 2813223, at *7–8; *Snider II*, 2017 WL 6336596, at *6.  We highlight that one Mrs. Snider's experts, Colin Sommer, testified unequivocally that his "analysis revealed that we had a broken guide because the guide was soft. The broken guide caused a broken valve, which broke the engine." (N.T. 1/26/2017, 100).

was amply sufficient evidence to show that Continental's defective assembly caused the crash.

Third, Continental asserts that the district court improperly submitted Snider's failure to warn claim to the jury because 1) GARA prohibits such claims brought more than eighteen years after the aircraft's first delivery, and 2) the instructions were misleading. "A party is entitled to a jury instruction that accurately and fairly sets forth the current status of the law."[12] A party does not have "have the right to a jury instruction of its choice, or precisely in the manner and words of its preference."[13] Rather, we evaluate the charge to ensure that it fairly and adequately sets forth the law applicable to the case.[14]

Continental's first argument can readily be dismissed for the reasons discussed above—GARA's eighteen year statute of repose did not shield Continental because it manufactured the cylinder assembly that was installed in 2004. Continental's counterarguments are brief and unclear. It relies on an opinion from the Court of Appeals for the Ninth Circuit that held that a "failure to warn about a newly perceived problem" does not restart GARA's eighteen-year clock absent the installation of a new component part.[15] In so holding, the Ninth Circuit declined to read a "duty to upgrade and update" into GARA's text.[16] *Lyon* is inapposite because it was not Continental's failure to warn

---

[12] *Douglas v. Owens*, 50 F.3d 1226, 1233 (3d Cir. 1995).
[13] *Id.*
[14] *Id.*
[15] *Lyon v. Agusta S.P.A.*, 252 F.3d 1078, 1088 (9th Cir. 2001).
[16] *Id.*

5

that reset GARA's eighteen-year bar here. Rather, it was the installation of the new cylinder assembly. Accordingly, this claim fails from its inception. We also reject Continental's claim that the district court's instruction was misleading. Having reviewed the instruction, we find it accurately conveyed the law to the jury, and we adopt the district court's conclusion to that effect.[17]

Finally, Continental raises two main challenges to the district court's evidentiary rulings. First, it argues that the court erred when it failed to either limit or bar testimony from two of Mrs. Snider's experts, William Carden and Colin Sommer. It asserts that Carden's testimony was too unreliable and speculative to support his ultimate conclusion that the exhaust valve guide had been defectively manufactured and that Sommer testified to matters beyond his proffered area of expertise of aircraft accident investigation.

We disagree. First, we note that counsel for Continental did not object to Mr. Carden's qualification as an expert and, in fact, failed to ask a single question during *voir dire*.[18] In any event, we find that Mr. Carden's expert testimony was admissible. Continental points to several areas of the expert's testimony that were contradicted by their own expert, and to places in the record where Mr. Carden acknowledged that he was unable to testify with specificity about certain conditions that existed at the time of manufacture. But these concerns implicate the weight of Mr. Carden's testimony, not its admissibility.[19]

---

[17] *See Snider II*, 2017 WL 6336596, at *9–10.

[18] JA 1192.

[19] *See Kannankeril v. Terminix Intern., Inc.*, 128 F.3d 802, 809 (3d Cir. 1997) ("If the expert meets liberal minimum qualifications, then the level of the expert's expertise goes

As for Mr. Sommer, we agree with the district court that to the extent that his testimony referenced metallurgical terms and processes, such testimony was admissible. Although, Mr. Sommer did not testify as an expert on metallurgy, he was permitted to rely on the findings of other experts in forming his conclusions. He also was permitted to explain that reliance to the jury when discussing how he arrived at his ultimate conclusions. Accordingly, we reject this claim for the reasons discussed by the district court.[20]

Next, Continental attacks the district court's admission of "Certificates of Compliance," "Service Difficulty Reports," and other third-party documents relating to exhaust valve guide failures. We agree with the district court that such evidence was "wholly relevant and not unfair or unduly prejudicial to the interests of" Continental.[21] We also note that Continental's substantial reliance on our opinion in *Barker v. Deere & Co.*[22] is patently misplaced.  That case held that "when a plaintiff attempts to introduce evidence of other accidents as direct proof of a design defect, the evidence is admissible only if the proponent demonstrates that the accident occurred under circumstances substantially similar to those at issue in the case at bar."[23] This case did not involve a design defect, nor was the evidence introduced to serve as direct evidence of a defect of

_____

to credibility and weight, not admissibility . . . [T]he expert's alleged shortcomings were raised properly on cross-examination and went to the credibility, not the admissibility, of his testimony.").

[20] *Snider II*, 2017 WL 6336596, at *12.

[21] *Id.* at *13.

[22] 60 F.3d 158 (3d Cir. 1995).

[23] *Barker*, 60 F.3d at 162.

7

any kind. Rather, it was introduced to show that Continental had knowledge that its exhaust valve guides were dangerous. Consequently, we reject this claim as well.

## III.

For the foregoing reasons, we will affirm the judgment of the district court and the court's analysis as explained in its very well-reasoned and thorough opinions.