639 A.2d 759

**In the Matter of District Justice Jennie I. PEKARSKI.**

Supreme Court of Pennsylvania.

Argued May 4, 1993.

Decided March 4, 1994.

Robert L. Keuch, Sol. and William I. Arbuckle, III, Chief Prosecutor, for Judicial Inquiry Review Bd.

Samuel C. Stretton, West Chester, for respondent.

Before NIX, C.J., and FLAHERTY, ZAPPALA, PAPADAKOS, CAPPY and MONTEMURO, JJ.

## OPINION

ZAPPALA, Justice.

Jennie I. Pekarski was appointed to the position of District Justice in Bristol Township, Bucks County, in 1978. She subsequently was elected to a full term in 1980 and reelected in 1986. In 1987, Pekarski was convicted by a jury of one count of obstruction of the administration of law. On appeal, Superior Court reversed Pekarski's conviction, *Commonwealth v. Pekarski*, 386 Pa.Super. 651, 555 A.2d 942 (1988), and we affirmed Superior Court, 524 Pa. 463, 573 A.2d 1024 (1990). The Commonwealth chose not to retry Pekarski on the obstruction charge.

Because of Pekarski's original conviction, we removed her from her position of District Justice by our order of March 4, 1988. After the Commonwealth indicated it would not retry

Pekarski, she petitioned this Court to vacate our previous removal order and reinstate her to her District Justice position. However, on September 6, 1990, the Judicial Inquiry and Review Board (JIRB) filed a notice of formal charges against Pekarski àlleging ten violations of the Rules of Conduct, Office Standards, and Civil Procedures for District Justices (Code). By our order dated February 27, 1991, we vacated our original order of Court to the extent that we no longer barred Pekarski from holding other judicial offices but withheld action on her reinstatement request pending a hearing before JIRB.

Hearings on this matter were conducted on October 21, 1991 and October 22, 1991 before a three-member panel of JIRB. That panel filed its initial report recommending removal on or about October 14, 1992. Timely exceptions and objections to that Report were filed and argued before the full Board. Subsequently, on January 8, 1993, the Board filed its final report with this Court recommending that Pekarski be permanently removed from her position as District Justice. Pekarski then requested our review.

Initially, we note our scope of review in judicial disciplinary matters as a duty to independently review the record to determine whether the charges have been established by clear and convincing evidence. *In re: JIRB v. Snyder,* 514 Pa. 142, 523 A.2d 294 (1987), cert. denied, sub nom *Snyder v. Pennsylvania Judicial Inquiry and Review Board,* 484 U.S. 829, 108 S.Ct. 100, 98 L.Ed.2d 61 (1987). Clear and convincing evidence means testimony that is so clear and direct as to permit the trier of fact to reach a clear conviction, without hesitancy, as to the truth of the facts at issue. *In re: Matter of Sylvester,* 521 Pa. 300, 555 A.2d 1202 (1989). The interpretation of the ethical canons of the Code and its application is exclusively vested in this Court with the Board's recommendation having no binding effect. *Matter of Chiovero,* 524 Pa. 181, 570 A.2d 57 (1990). Applying these precepts, we hold that Pekarski did violate the Code and order her removal from office.

The Board charged Pekarski with violating Rules 1, 2, 3, 8, 12, and 13 of the Code. Most of these rule violations, or at least the most serious violations, arise out of Pekarski's relationship with the Simeone family. As such, this relationship and the violations arising out of this relationship serve as the basis of our determination.

Michael Simeone, Jr., was charged on January 22, 1986, with driving while under the influence of alcohol following an automobile accident in which he had been involved. Officer Michael Maloney of the Bristol Township Police Department filed a criminal complaint against Michael on that date alleging the drunk driving violations.

The record establishes that Pekarski and the Simeone family had a close personal relationship. In fact, Michael lived with Pekarski for several months in 1982 after his father beat him with a baseball bat. Michael's aunt and uncle, Laurel and Anthony Simeone, were good friends and often socialized with the Pekarskis.

In 1982, Pekarski's husband, James, borrowed $15,000.00 from Anthony Simeone to be used in an ongoing bar business in New Jersey owned jointly by Pekarski and her husband. To secure this loan, Pekarski's husband used $20,000.00 to $25,000.00 of equipment as collateral. Both Pekarski and her husband testified that Pekarski was unaware of this loan until 1987 when she approached her husband about this loan while he was hospitalized.

Notwithstanding this relationship, Pekarski participated in at least 33 cases in which either Anthony and Laurel Simeone or his company was involved. While Pekarski acknowledged her actions, she noted her ignorance of Rule 12 B of the Code and indicated that in each instance she advised Simeone's adversary of her relationship with the Simeones and offered to recuse herself if requested.

Likewise, the same problem arose with the relationship of James Pekarski and his business partner, Richard Okomski, Jr. Okomski's father owned J & R Check Cashing Agency (J & R). J & R appeared before Pekarski many times. Pekar-

ski testified that in those circumstances she advised J & R's adversary of the fact that the son of the owner of J & R had a business relationship with her husband and gave the parties the opportunity to request her recusal. On those occasions when she was requested to recuse herself, she did.

The last incident, or at least the incident which brought this matter to the forefront, involved Michael Simeone's arrest for drunk driving. As indicated, Michael was arrested on January 22, 1986. The first two scheduled preliminary hearings were continued due to Michael's inability to appear as a result of the injuries he sustained in the accident. The March hearing was allegedly continued because Michael had not received notice of the hearing. Michael did appear for an arraignment on April 7, 1986, apparently without notice to Officer Maloney.

It is undisputed that Pekarski drove Michael to and from his arraignment on April 7, although it was disputed as to whether Pekarski picked Michael up at his residence or at the Pekarski home. In any event, on the evening of the arraignment, Michael drove to Pekarski's home and gave her a third party check in the amount of $1,666.67. Pekarski then gave Michael a piece of paper on which she wrote, "4–7–86 I owe you $1,666.81 [sic]" and signed it. Pekarski endorsed this check and used it to purchase money orders payable to her mortgage company, her son, and herself. Pekarski has never repaid the $1,666.67. Michael's father testified that he sent the money to Pekarski following a discussion with her regarding her financial problems. Pekarski denied that she had any such conversation with Mr. Simeone but did testify that she had mentioned her financial problems to Michael when driving him to his arraignment.

It was Pekarski's understanding from her discussions with Michael that he was going to waive the preliminary hearing. However, Pekarski did not allow him to waive the preliminary hearing at the time of his arraignment on April 7 because she believed that he could not do both at the same time. Although Pekarski apparently attempted to schedule a preliminary hearing in May of 1986, none was held, and no further

attempts were made to schedule a preliminary hearing until December 1986. Pekarski testified that she listed the Simeone matter for a preliminary hearing on December 16, 1986, but continued it at the request of Officer Maloney. The preliminary hearing was finally held on January 8, 1987.

■ At the preliminary hearing, Michael appeared with his attorney. When Pekarski realized that Michael was not going to waive his preliminary hearing, she asked Michael's attorney and Officer Maloney to meet with her in her chambers. At that time, she indicated her intent to disqualify herself from Michael's case because of her relationship with Michael and his family and because of the money given to her by Michael's father.[1]

Rule 8 B of the Code provides as follows:

**B.** A District Justice shall inform himself about his personal and fiduciary financial interests and make a reasonable effort to inform himself about the personal financial interests of his spouse and minor children residing in his household.

Both Pekarski and her husband testified that Pekarski was unaware of the $15,000.00 Simeone loan until 1987. For this reason, Pekarski contends that she could not disclose this financial interest to litigants in hearings in which the Simeones were parties. However, Rule 8 B imposes a duty upon a District Justice to know the extent of a spouse's financial interests. Furthermore, Pekarski was a part owner of the business that used the funds loaned by Anthony Simeone. Because of Pekarski's position in the bar business and her failure to make the relevant inquiries of her husband knowing full well the financial straits they were in, the Board has proven sufficient facts to establish a violation of this rule.

■ The Anthony and Laurel Simeone relationship also implicates Rule 2 A. That rule provides:

**1.** Although Pekarski and the Board presented conflicting evidence, the above factual statement is for the most part undisputed and clearly ascertainable from the record. Furthermore, the above undisputed facts are sufficient to support our conclusion.

**A.** A District Justice shall respect and comply with the law and shall conduct himself at all times in a manner that promotes public confidence in the integrity and impartiality of the judiciary. A District Justice shall not allow his family, social, or other relationships to influence his judicial conduct or judgment. He shall not lend the prestige of his office to advance the private interests of others, nor shall he convey or permit others to convey the impression that they are in a special position to influence him.

Under Rule 2 A, a District Justice should not give the appearance of impropriety through his relationship with social friends. Again, Pekarski did disclose to litigants that Anthony and Laurel Simeone were close personal friends. However, because of the impossibility of conveying the extent of that relationship, Pekarski should have taken the initiative and preliminarily recused herself from any matter before her in which the Simeones were involved.

Likewise, with respect to Michael, Pekarski should have immediately recused herself from his drunk driving case. Because of her relationship with Michael, Pekarski may well have conveyed to him the impression that she would consider assisting him in his legal problem. In fact, this impression served as the basis for the Simeone $1,666.67 loan. Accordingly, sufficient evidence was presented to establish the violation of Rule 2 A.

Without minimizing the above violations, the most serious and clearest violation is that ethical consideration set forth in Rule 12 B. According to Rule 12 B:

**B.** A District Justice or a member of his family residing in his household may accept any other gift, bequest, favor, or loan only if the donor is not a party or other person whose interests have come or are likely to come before the District Justice.

Unlike the Code of Judicial Conduct, the rules governing acceptance of gifts for District Justices are clearly set forth.[2]

---

**2.** In *In re: Cunningham,* 517 Pa. 417, 538 A.2d 473 (1988), we interpreted the Pennsylvania Constitution and the Code of Judicial Conduct

At no time may a District Justice or a member of his family residing in his household accept a gift or loan from a person who is a party. In this instance, we are confronted with two such occasions. Anthony Simeone loaned Mr. Pekarski $15,-000.00, and Michael Simeone, Sr., loaned Pekarski $1,666.67.[3] Clearly, both were direct violations of Rule 12 B. As such, the Board has proven the violation of this rule.

Without question, the Board has established violations of Rules 2 A, 8 B and 12 B by clear and convincing evidence. Our only remaining task is to adjudge the appropriate sanction. In *Cunningham*, supra, we had no problem removing all eight Common Pleas' judges from their offices based upon a finding that each accepted cash "gifts" which appeared to compromise the integrity of the judiciary. This was so even though no ethical canon specifically prohibited the acceptance of a cash "gift." In *Matter of Chiovero*, supra, we did not find any ethical violation on behalf of a Common Pleas judge who received a new roof, which he did not pay for, when insufficient evidence was presented establishing his knowledge of the installation of the roof prior to its completion. Furthermore, the person who paid for the roof was not in a special position to influence that judge. Finally, in *Matter of Braig*, 520 Pa. 409, 554 A.2d 493 (1989), we dismissed all ethical charges against a Common Pleas judge who received a cash Christmas gift. In *Braig*, the evidence clearly established a history of gift exchanges as well as a pattern of recusal when any matter relating to the donor's union was before the judge.

While Pekarski argues that her situation is most similar to *Chiovero* and *Braig*, clearly it is not. Although in *Chiovero* the judge had no knowledge of the benefit he received (much like the $15,000.00 loan from Anthony Simeone to James Pekarski), the person who paid for the installation of the new roof was not in a special position to influence the judge. Likewise, the similarities between *Braig* and this appeal are

as prohibiting a jurist from accepting a gift being given with the intent to influence a judge's performance.

**3.** It makes no difference whether this money is characterized as a gift or a loan. Under Rule 12 B, both are prohibited.

illusory. Unlike *Braig*, Pekarski did participate in 33 cases in which Anthony Simeone was involved and did participate in Michael Simeone's case when she was the direct recipient of a $1,666.67 payment. Thus, the present appeal is most similar to the issue raised in *Cunningham*, i.e., receipt of a gift with the appearance of compromising the integrity of the judiciary. In fact, this appeal goes one step further than *Cunningham* in that the Code specifically prohibits the acceptance of a gift or a loan from a party or person whose interests are likely to come before that District Justice. In light of that clear ethical violation, we must conclude that the appropriate sanction is removal.

Accordingly, Jennie I. Pekarski is ordered removed from her office as a district justice.[4]

LARSEN, J., did not participate in the consideration or decision of this case.

MONTEMURO, J., did not participate in the decision of this case.

---

**4.** Because these noted violations warrant the sanction of removal, it is unnecessary to review other alleged violations. However, we do acknowledge Respondent's argument that she was denied due process since JIRB commingled prosecutorial, investigative, and adjudicative functions and find such argument meritless. See *Matter of Glancey*, 515 Pa. 201, 527 A.2d 997 (1987).