**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 18-2611
_____

SANG B. PARK

v.

MARCELO AHN, THE WALLACE,
Appellants
_____

On Appeal from the United States District Court
for the Western District of Pennsylvania
No. 2-15-cv-00678
Chief Magistrate Judge: Hon. Maureen P. Kelly
_____

Submitted Under Third Circuit L.A.R. 34.1(a)
May 3, 2019
_____

Before: RESTREPO, PORTER, and FISHER,
*Circuit Judges*

(Filed: July 12, 2019)

_____

OPINION*
_____

---

* This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

PORTER, *Circuit Judge*.

Under Pennsylvania law, a promise to repay a debt, whether made orally or in writing, creates an enforceable contract. Dr. Sang B. Park claimed that his great-nephew, Marcelo Ahn, made such a promise and, after a multi-day trial, a jury agreed. Ahn now asks us, as he did the District Court, to set aside the jury's verdict and order a new trial. But, finding no error in the District Court's refusal to disturb the jury's verdict, we will affirm.

## I

Park claimed that Ahn breached a contract to repay $300,000 that Park had given him to open a restaurant. **(R.103.)** Park contended that this payment was a loan and that, after some disputes arose between them, Ahn promised to begin repaying him. **(R.104.)** Ahn countered that the money was an investment in the restaurant and denied that it was ever converted into a loan. (*Id.*) Both parties agreed that no money was repaid. (*Id.*)

Following a trial, the jury returned a verdict for Park, making Ahn and his restaurant, The Wallace, liable to repay the $300,000. **(R.25–27.)** Ahn filed a motion to alter or amend the judgment or, in the alternative, for a new trial. **(R.4.)** The District Court denied the motion **(R.3–18)**, and Ahn timely appealed. **(R.1)**

## II

The District Court had original jurisdiction under 28 U.S.C. § 1332 based on diversity. The parties consented to having a magistrate judge conduct the proceedings, which satisfied 28 U.S.C. § 636(c)(l). We have appellate jurisdiction under 28 U.S.C. § 1291, as "an aggrieved party may appeal directly to the appropriate United States court

2

of appeals from the judgment of the magistrate judge in the same manner as an appeal from any other judgment of a district court." 28 U.S.C. § 636(c)(3).

## III

Ahn appeals from the District Court's order denying his motion to alter or amend judgment or, in the alternative, for new trial. Motions for new trial are governed by Federal Rule of Civil Procedure 59. "The authority to grant a new trial resides in the exercise of sound discretion by the trial court, and will only be disturbed if the court abused that discretion." *Wagner by Wagner v. Fair Acres Geriatric Ctr.*, 49 F.3d 1002, 1017 (3d Cir. 1995).

Ahn argues that his motion for a new trial should have been granted for two reasons. First, he asserts that the District Court abused its discretion under Federal Rule of Evidence 408 when it admitted portions of an email containing statements that he made in connection with a settlement offer. Second, he claims that the District Court erred in its charge to the jury. **(Blue br. 9–31.)** Prejudicial errors in the admission of evidence or in the charge to the jury are proper grounds on which to seek, and grant, new trials. *See Lind v. Schenley Indus., Inc.*, 278 F.2d 79, 90 (3d Cir. 1960). But even if the trial court erred in its rulings, a new trial should not be ordered if the errors were harmless. *Barker v. Deere & Co.*, 60 F.3d 158, 164 (3d Cir. 1995). Under these legal standards, we conclude that Ahn cannot prevail on either issue.

**A**

We first address Ahn's challenge to the admission of evidence at trial. In an effort to settle the underlying litigation, Ahn sent the following email (italics added) to Park through his son, Chong Park, acting as an intermediary:

From: Marcelo Ahn [ … ]
Subject: Loan
Date: June 10, 2015 at 7:44:41 PM EDT
To: Chong Park [ … ]

Chong,

How are you? I hope all is well with you. As you may know, Dr. Park (your father) filed a lawsuit for breach of contract for his initial investment in the restaurant. I totally understand his anger and frustration and do not blame him for filing a lawsuit.

You already know the whole story about Uncle Carlos taking the money instead of investing in the restaurant, and now has left me essentially "holding the bag" when I didn't get Dr. Chong's initial investment. The issue has caused a big rift in our families so I do not want to start pointing fingers at the wrong-doer again, but rather want our families to be back to normal.

As I previously promised, I plan on paying back your father's initial investment but needed some time to grow the business. I apologize for not prioritizing repaying your dad because I had other loans with banks and creditors that I felt needed to first be paid off.

*Meanwhile a lawsuit was recently filed, and again, I don't blame your father as it only demonstrates his frustration on the situation. At the present time, I am waiting to get a confirmation on a loan so I can make a first payment. When they confirm me this loan I will immediately offer $25,000 initial payment, then make "minimum" of $5,000 per month thereafter. As the restaurant grows and my other debt gets paid off, I can and will most certainly increase my monthly payment until it is eventually paid off.*

*This is all I can afford at this moment and ask that you talk to your father about my offer of repayment. If I have to answer the lawsuit and continue with litigation, it is going to cost both me and your father a lot of money to*

4

*maintain the lawsuit in attorney fees. Instead of paying the lawyers, I rather use that money to pay down your father's investment. As such,*

*I ask that your father dismiss the lawsuit. The fact that he filed the lawsuit show me that he is very upset and serious, and he got his point across. If I don't pay as I promised, he can always re-file the lawsuit.*

*Please talk to your father and let me know if my repayment proposal is okay with him. I will immediately pay the initial $25,000 if he agrees. American Express Loan Dept. should give me an answer sometime next week.*

*I thank you and apologize in advance for putting you in this situation as intermediary.*

Very truly yours,

Marcelo Ahn – CEO
[ … ]

(***Compare* R.490 *with* 491.**) Before trial, Ahn filed a motion *in limine* to exclude this email under Federal Rule of Evidence 408. Ultimately, the District Court granted the motion in part, redacting the italicized paragraphs to remove the offers of repayment in exchange for dismissing the suit, but leaving unredacted the unitalicized paragraphs, which it concluded contained only factual statements and not offers of repayment. **(R.505–06; *compare* R.490 *with* R.491.)**

On appeal, Ahn argues, in part, that he wrote the entire email in the interest of negotiating a settlement and so the entire document should have been deemed inadmissible under Rule 408, not merely the paragraphs that communicated offers to settle. **(Blue br. 9–19.)** Ahn is correct.

The admission of evidence under the federal rules is reviewed for an abuse of discretion. *Citizens Fin. Group, Inc. v. Citizens Nat'l Bank of Evans City*, 383 F.3d 110,

5

132–33 (3d Cir. 2004). Rule 408 prohibits the use of both "offer[s]" of "a valuable consideration in compromising or attempting to compromise the claim; *and ... statement*[*s*] made during compromise negotiations about the claim" to prove the validity of a claim. Fed. R. Evid. 408(a) (emphasis added). This includes statements of fact, even when those statements can be separated from the offer itself.

Under the common law, "a line was drawn between offers to settle and statements of fact made during settlement negotiations." Stephen A. Saltzburg, et al., *Federal Rules of Evidence Manual*, § 408.02[1] (11th ed. 2015). Only factual statements couched in hypothetical terms, assumed to be true for purposes of negotiation, were inadmissible; unqualified factual statements, if they could be separated from the offer, were admissible. Michael H. Graham, *Handbook of Federal Evidence*, § 408:1, 919–21 (8th ed. 2016). This resulted in a trap for the unwary and impeded the informal discussions that are necessary to produce settlements. *Ramada Development Co. v. Rauch*, 644 F.2d 1097, 1106–07 (5th Cir. 1981) (citation omitted). So Rule 408 did away with the distinction and now prohibits the use of *all* statements made during settlement negotiations to prove the validity of a claim. *See Winchester Packaging, Inc. v. Mobil Chemical Co.*, 14 F.3d 316, 320–21 (7th Cir. 1994). Though the rule has an exception when statements are used for some purpose other than proving the validity of a claim, when that other purpose "is really an issue that bears ultimately on an element of liability, then the rule of exclusion will [still] apply."

6

*Federal Rules*, § 408.02[3](2) (citing *Trebor Sportswear Co. v. The Limited Stores, Inc.*, 865 F.2d 506, 510 (2d Cir. 1989)).[1]

In this case, the District Court excluded "all of the communications as to the offer of settlement" (*i.e.*, the italicized paragraphs), but admitted all of the statements preceding the settlement offer. **(R.13–14, 505–06.)** The District Court reasoned that "the statements in the first three paragraphs of the email constituted a review of the historic events of the interaction between Plaintiff and Ahn and the nature of their agreement as a 'loan' which was separate from the subsequent settlement offer." **(R.15.)** But that distinction is only appropriate under the common law, not Rule 408. Park also "vigorously opposed exclusion of the email" because Ahn had made admissions in the email on the critical issue of whether Park's payment had been an investment or a loan. **(*See id*.)** But using a party's statements, made in connection with negotiations, to show the validity of a claim is precisely what Rule 408 prohibits. The District Court erred when it admitted the redacted email.

Even so, the District Court did not abuse its discretion when it denied Ahn's motion for a new trial because any error in the admission of the redacted email would not have affected the outcome of the trial.

First, the redacted email is not overly prejudicial to Ahn's case. While the email's subject line was "Loan" and Ahn wrote that he had not prioritized repaying Park because he "had other loans with banks and creditors"—and Park made as much out of those statements as he could at trial—the email is more consistent with Ahn's theory of the case.

---

[1] The rule also exempts statements admitting critical facts in criminal cases, *see* Fed. R. Evid. 408(a)(2), but that exception does not apply to this dispute between private parties.

7

(**R.491.**) Throughout the redacted email, he refers to the money paid by Park only as his "initial investment." (**Id.**) In the first paragraph he writes: "Dr. Park (your father) filed a lawsuit for breach of contract for his initial investment in the restaurant." (**Id.**) In the second paragraph he refers to "Uncle Carlos" taking the money rather than investing in the restaurant and the loss of "Dr. Chong's initial investment." (**Id.**) Then in the third paragraph he states: "As I previously promised, I plan on paying back your father's initial investment but needed some time to grow the business." (**Id.**)

Second, the statements admitted in the redacted email were cumulative of other properly admitted evidence. Defense Exhibit V was a letter from Ahn to Park dated February 10, 2013. (**R.156.**) In that letter, Ahn wrote, "Per your request, I am writing this letter in order to explain to you how I am going to pay you back the $300,000." (**R.157.**) Ahn then acknowledged that he had "promised" to repay the money, though he would have to do it in installments. (**Id.**) Joint Exhibit J9 was a letter from Ahn to Park dated July 1, 2014. (**R.158.**) In that letter, Ahn expressed gratitude for Park's patience and guaranteed that he would do his best to resolve the repayment issue by making $5,000 per month installment payments. (**Id.**) Joint Exhibit J7 was an email exchange between Park, through his son, and Ahn. (**R.227–28.**) In that exchange, Park stated, "As per our phone conversation … the $300,000 that I place into the restaurant will be a loan. I am hopeful that you will in good faith return the loan in full as soon as possible." (**R.228.**) Ahn responded, "Per our telephone conversation, I will return your money either from the profits of the restaurant, including the profits from my shares, or when the restaurant starts generating enough profits…." (**Id.**) Ahn stipulated to the admission of these exhibits (**see**

8

**R.162**), each of which conveyed the same information as the disputed paragraphs of the redacted email, if not more.

When properly admitted evidence is overwhelming and the prejudicial effect of the improperly admitted evidence is insignificant by comparison, it is clear beyond a reasonable doubt that the improperly admitted evidence would not have affected the outcome of the trial. *Schneble v. Florida*, 405 U.S. 427, 430–31 (1972) (citing *Harrington v. California*, 395 U.S. 250 (1969)). Because any error in admitting the redacted email would not have affected the ultimate verdict in this case, it would not have been appropriate to grant Ahn's motion for a new trial. *Barker*, 60 F.3d at 164. The District Court did not abuse its discretion by denying that motion.

**B**

We next address Ahn's challenge to the District Court's charge to the jury. The disputed issue of fact presented to the jury below was whether, after their falling out, Ahn had agreed to treat Park's contribution of $300,000 to the opening of his restaurant as a loan and to repay it. (***Compare* R.118–19 *with* 134–35, 137–38.**) In connection with this disputed fact issue, the parties jointly proposed points for the jury's charge. (**R.66–77.**) These points instructed the jury that Park had to prove the existence of the oral contract by a preponderance of the evidence. (**R.66.**) Later, Ahn proposed a revised jury instruction stating that "[t]he existence of an oral contract must be demonstrated by clear and

9

convincing evidence." **(R.78.)** The District Court declined Ahn's revised instruction because it was untimely. **(R.25.)**

In his motion for a new trial, Ahn did not dispute the untimeliness of his revised instruction, but claimed that the District Court committed plain error when it declined the instruction because, he argued, the instructions were erroneous without it. **(R.5.)** The District Court addressed Ahn's challenge and showed that his proposed jury instruction was not only untimely, it was, in fact, an incorrect statement of the law. **(R.8–11.)**

Generally, we review the refusal to give jury instructions under an abuse of discretion standard. *United States v. Coyle*, 63 F.3d 1239, 1245 (3d Cir. 1995). But when the question is "whether the jury instructions stated the proper legal standard," we employ *de novo* review. *Id.*

Though the Pennsylvania Supreme Court has required the clear and convincing evidence standard in a narrow range of cases,[2] it has never required this more exacting standard to show the existence of an oral contract. To the contrary, the Pennsylvania Supreme Court applied the preponderance of the evidence standard to the formation of a simple oral contract, though it did so without discussion. *See Idell v. Falcone*, 235 A.2d 394, 396 (Pa. 1967). A committee note to the Pennsylvania model instructions recognizes

---

[2] These include civil commitment, *In re J.M.*, 726 A.2d 1041 (Pa. 1999); termination of parental rights, *In re Adoption of Charles E.D.M. II*, 708 A.2d 88 (Pa. 1998); to overcome the presumption of paternity, *Brinkley v. King*, 701 A.2d 176 (Pa. 1997); in judicial disciplinary matters, *In re Pekarski*, 639 A.2d 759 (Pa. 1994); to prove fraud, *Phillips v. Commonwealth, Workmen's Compensation Appeal Board*, 545 A.2d 869 (Pa. 1988); and to prove undue influence in a will contest, *Estate of Reichel*, 400 A.2d 1268 (Pa. 1979).

that there has been some confusion among lower courts in Pennsylvania on the burden of proof issue in oral contracts. *See* Pa. SSJI (Civ) 19.70 **(cited at R.9–11)**. But even with oral contracts, the lower courts have applied the higher standard only with respect to certain kinds of oral contracts: "(1) an alleged oral modification to a written contract, (2) an oral contract to make a will, and (3) claims against a decedent's estate based on an oral contract." *Id.*; *see also Billet Promotions, Inc. v. IMI Cornelius, Inc.*, No. CIV. A. 95–1376, 1998 WL 721081, at *13 (E.D. Pa. Oct. 14, 1998) (collecting cases); *Quandry Solutions Inc. v. Verifone Inc.*, Civil Action No. 07–097, 2009 WL 997041, at *6 (E.D. Pa. Apr. 13, 2009). We agree with the committee that under Pennsylvania law, "in general, oral contracts that do not modify a written contract must be proven by the preponderance of the evidence." Pa. SSJI (Civ) 19.70.

On appeal, Ahn now argues that there was in fact an (unsigned) written contract for Park to be an investor in the restaurant and that any modifications to that (unsigned) written contract between Park and Ahn had to be proved by clear and convincing evidence. **(Blue br. 19–21.)** But that is not the same argument Ahn relied on below, either at trial or when he requested the jury instruction. The only question was whether Ahn had entered an oral contract with Park. The theory that this was an oral modification to a written contract was never presented below, and Ahn's attempt to recast his argument on appeal is unavailing. *See Brown v. Philip Morris Inc.*, 250 F.3d 789, 799 (3d Cir. 2001) (arguments raised for the first time on appeal are deemed waived).

The District Court did not err by accepting the joint jury instructions that articulated the correct legal standard and rejecting Ahn's revised jury instruction that did not. Because

11

there was no error, the District Court did not abuse its discretion when it denied Ahn's motion for a new trial.

## IV

The District Court properly exercised its discretion when it denied Ahn's motion for a new trial. We will affirm the District Court's order.